482 F.2d 1086
 178 U.S.P.Q. 13
 SAFE FLIGHT INSTRUMENT CORPORATION, a New York corporation,
Plaintiff-Appellant,
v.
McDONNELL-DOUGLAS CORPORATION, a Maryland corporation, and
Sperry Rand Corporation, a Delaware corporation,
Defendants-Appellees.
 No. 71-1751.
 United States Court of Appeals,
Ninth Circuit.
 April 27, 1973.
Rehearing Denied Sept. 13, 1973.
 
 Thomas M. Marshall (argued), William R. Woodward, New York City, Robert Yale Libott, Richard H. Keatinge, Keatinge, Libott, Bates & Loo, Los Angeles, Cal., for plaintiff-appellant.
 W. Robert Spensley (argued), Stuart Lubitz, Edwin H. Taylor, Spensley, Horn, Jubas & Lubitz, Los Angeles, Cal., Richard B. Hoegh (argued), Dennis B. Haase, Hahn, Cazier, Thornton, Hoegh & Leff, Los Angeles, Cal., for defendants-appellees.
 Before CHAMBERS, HAMLEY, and WALLACE, Circuit Judges.
 HAMLEY, Circuit Judge:
 
 
 1
 Safe Flight Instrument Corporation (Safe Flight) brought this patent infringement action in the United States District Court for the Central District of California on December 31, 1968. In a six-count amended complaint Safe Flight charged defendants, McDonnell-Douglas Corporation (MDC) and Sperry Rand Corporation (Sperry), with infringement of Safe Flight's U.S. Letters Patent No. 3,043,540 ('540 patent), and with the improper use of trade secrets.
 
 
 2
 The '540 patent is entitled "Aircraft Instruments" and describes a closed-loop aircraft instrument system intended to assist the pilot of a jet aircraft in takeoff and other flight maneuvers such as landing approach and go-round. The subject matter of the '540 patent claims in suit is in commercial practice by Safe Flight in a Speed Command and Automatic Throttle System (SCAT), manufactured and sold by Safe Flight. The patent was issued to Safe Flight on July 10, 1962, as assignee of Leonard M. Greene.
 
 
 3
 The infringement claims are set forth in counts one, two and three of Safe Flight's amended complaint. In count one, Safe Flight alleged that MDC and Sperry have infringed, and will continue to infringe, the '540 patent in connection with the manufacture and sale of an Automatic Throttle/Speed Control System (AT/SC) for installation on MDC's model DC-10 aircraft. In count two, Safe Flight alleged that MDC and Sperry have infringed, and will continue to infringe, that patent in connection with the manufacture and sale of devices comparable to AT/SC for use on aircraft manufactured by MDC other than model DC-10. In count three, Safe Flight alleged that MDC (but not Sperry) has infringed, and will continue to infringe, the '540 patent by making, using and selling products embodying the patented invention on MDC model DC-9 aircraft and other aircraft.[1]
 
 
 4
 Defendants asserted various defenses, including that of patent invalidity. MDC moved for a partial summary judgment dismissing count three of the amended complaint. Safe Flight countered with cross-motions for partial summary judgment against MDC on the third count. Both motions were denied.
 
 
 5
 After a lengthy trial limited to the validity of the '540 patent and infringement of that patent by the Sperry AT/SC system, the district court entered a judgment declaring invalid all of the '540 patent claims in issue. In addition, the district court adjudged that Sperry's AT/SC system did not infringe the '540 patent even if that patent were valid. Safe Flight appeals.[2]
 
 
 6
 We will first consider issues pertaining specifically to counts one and two. The first such issue is whether MDC and Sperry are collaterally estopped from contesting the validity of the '540 patent.
 
 
 7
 In July, 1967, Safe Flight instituted a patent infringement suit, involving the '540 patent, and other patents, in the United States District Court for the Western District of Washington (Seattle case).[3] The defendants were United Control Corporation and its successor U. C. Liquidating Corporation, collectively referred to herein as UCC.
 
 
 8
 That suit was the outgrowth of UCC's action in contracting to manufacture its so-called Speed Command Computers of the angle of attack type, for installation in MDC's model DC-9 aircraft. In connection with the manufacture and sale of these devices, UCC agreed to indemnify MDC for any damages MDC might be required to pay for patent infringement. Safe Flight alleged, in the Seattle case, that the UCC devices infringed the '540 patent.
 
 
 9
 After a lengthy trial in the Seattle case, the district court in that case entered findings of fact and conclusions of law to the effect that the '540 patent is valid and claims 1 through 8, 17, 19, 20, 22 and 26 of that patent had been infringed by the defendants in that case. A judgment for Safe Flight, consistent with these determinations, was entered on December 11, 1968, and UCC and U. C. Liquidating Corporation appealed. The appeals were docketed in this court as Nos. 23,746 and 23,867.
 
 
 10
 Safe Flight thereafter requested that the appeals in the Seattle case be remanded to the district court to enable that court to entertain Safe Flight's motion for a new trial and for other relief. On May 27, 1969, in an unreported order, this court granted the requested remand. On July 31, 1969, Safe Flight entered into an agreement with UCC settling all issues in the Seattle case. Under the terms of this agreement UCC paid Safe Flight the sum of $2,509,922.19, and, by consent, a final judgment was entered, one provision of which determined that the '540 patent is valid. The appeals in Nos. 23,746 and 23,867 were thereafter dismissed.
 
 
 11
 During the trial, Safe Flight did not contend that MDC and Sperry, in defending against counts one and two of the amended complaint, were collaterally estopped to challenge the validity of the '540 patent because of the adjudication of the validity of that patent in the Seattle case. At the outset of this case Safe Flight contended, at most, that the adjudication of validity in the Seattle case was entitled to "great weight" in the absence of convincing new evidence of invalidity. Accordingly, the pre-trial order of March 30, 1970, does not refer to any collateral estoppel issue.
 
 
 12
 As a matter of fact, during the pretrial argument bearing on the cross-motions for summary judgment on count three, counsel for Safe Flight stated that had MDC not, by its motion for partial summary judgment, elected to accept benefits under the settlement agreement and judgment entered in the Seattle case, "they [MDC] could have remained solid and taken the position that nothing in Seattle affects them in any way . . . and they are entitled to their full day in court." Likewise, at the same hearing, counsel for Safe Flight conceded that "Sperry Rand has not had its day in court."
 
 
 13
 As recited in the judgment herein, the only issues tried were with regard to the validity of the '540 patent and whether that patent had been infringed by Sperry's AT/SC device. It is true that, in its cross-motion for partial summary judgment, Safe Flight contended that MDC was collaterally estopped by the judgment in the Seattle case. But that motion pertains only to count three of the amended complaint, to be dealt with below. The pre-trial order clearly provides for the separation of those matters pertaining peculiarly to counts three, four, five and six. Safe Flight did not raise collateral estoppel as to counts one and two during the proceedings in the district court. The court's findings of fact and conclusions of law made no reference to a collateral estoppel issue.
 
 
 14
 Even on this appeal, Safe Flight, in its opening brief, after referring to Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), decided after the entry of judgment in this case, contended only that because of the judgment in the Seattle case, the '540 patent was entitled not only to the usual presumption of validity, "but also to the further strengthened presumption of validity after a considered decision" in the Seattle case.[4]
 
 
 15
 In its reply brief on this appeal, Safe Flight began to harden its position concerning the asserted binding effect of the Seattle judgment insofar as counts one and two are concerned, until it finally asserted that MDC "and its privy, Sperry" should be bound by the outcome of the Seattle case. It was not until the oral argument before us that Safe Flight began to talk about "collateral estoppel."
 
 
 16
 In the context described above, we hold that the issue concerning the collateral estoppel of MDC and Sperry to assert their defense of patent invalidity as against counts one and two of the amended complaint was not raised and preserved by Safe Flight in the district court and therefore may not be presented on this appeal. Grantham v. McGraw-Edison Co., 444 F.2d 210, 216-217 (7th Cir. 1971); Strouhal v. Allied Development Co., 220 F.2d 541, 544 (10th Cir. 1955); City of Erlanger v. Berkemeyer, 207 F.2d 832, 839 (6th Cir. 1953).
 
 
 17
 The findings of fact of the district court contained fifty paragraphs. Under five different headings Safe Flight argues that twenty-two of these findings, pertaining to the validity of the '540 patent are clearly erroneous.
 
 
 18
 At the outset of its argument concerning these findings of fact, Safe Flight observes that the questioned findings are "completely inconsistent and directly contrary" to the findings entered in the Seattle case, and postures the problem as one of determining which of the two sets of findings are clearly erroneous under Rule 52(a), F.R.Civ.P.
 
 
 19
 We decline to approach the problem in this way. It is true, as defendants concede, that prior adjudications as to the validity of a patent "are entitled to respectful consideration and in doubtful cases they are strongly persuasive." Ritchie v. Lewis-Browning Mfg. Co., 196 F.2d 434, 436-437 (5th Cir. 1952). It was on this theory that the district court, in the case before us, admitted in evidence the judgment, findings of fact and conclusions of law entered in the Seattle case. We have no reason to believe that the district court in our action failed to accord these records of the Seattle case the weight to which they are entitled.[5]
 
 
 20
 But the respect which should be accorded prior adjudications as to the validity of a patent does not, absent estoppel running against the parties to the prior litigation, supplant the primary duty of a court to dispose of cases according to the law and the facts of the particular case before it. See Ritchie, supra, at 437.
 
 
 21
 Our function on appeal is consonant with this view. Moreover, it would not be practicable for us to enter into an appraisal of the relative soundness of the two sets of findings. The record of the Seattle case is not before us. The parties have argued pro and con as to the differences between the evidence in the two records, but we have no basis for evaluating their differing appraisals. We have accordingly determined the soundness of the findings of fact in the instant case, as measured by Rule 52(a), by a consideration of the evidence received in this trial.
 
 
 22
 We do not propose to deal individually with each of the twenty-two questioned findings of fact and the evidence relevant to each. Instead, we will consider them as a whole. Taken together, and with some of the unchallenged findings, these questioned findings represent the trial court's determination that, on this record, the device described in the patent claims at issue constitutes a combination of old elements, which combination would have been obvious at the time the invention was made to a person having ordinary skill in the relevant art. Findings having this import, if sustainable on the record, warrant a conclusion that the patent is invalid under 35 U.S. C. Sec. 103.
 
 
 23
 Safe Flight characterizes the device described in the '540 patent as a "director" instrument, as distinguished from a "displacement" instrument. Displacement instruments provide a pilot with information as to the flight situation then existing or which has just previously existed. Utilizing this information the pilot is expected to determine what corrective action, if any, should be taken, and proceed to take such action. Director instruments, on the other hand, convey no specific information to the pilot concerning the then existing flight situation. Instead, they direct him as to which way and how much he should move his controls to perform some predetermined task.
 
 
 24
 According to Safe Flight, the particular director instrument described in the '540 patent was primarily designed to meet the jet take-off problem encountered because of some aerodynamic peculiarities of jet aircraft. It had been determined that, in order to meet this problem a new criterion should be selected, namely, that the speed at the lift-off had to be a certain percentage above a speed called the minimum "unstick" speed.[6]
 
 
 25
 A concern then arose whether pilots could repeatedly and consistently perform the take-off maneuver demanded by this new criterion with the precision required. The necessary lift-off speed, which varies according to the weight of the aircraft, the runway altitude and the outside air temperature, is determined by the aircraft manufacturer and the FAA. However, instruments measuring speed were subject to lags and other problems.
 
 
 26
 Speed is controlled by rotation of the pitch attitude (raising or lowering the wheel nose of the aircraft). If the pilot knows the pitch attitude necessary to attain the proper lift-off speed and the existing pitch attitude, he can make adjustments to achieve the necessary pitch attitude. An instrument displaying pitch attitude on an artificial horizon was available, but it was subject to gyro precision errors.
 
 
 27
 Pitch attitude equals the angle of attack (the incidence angle with which the wings attack the air mass) plus the flight path angle. Therefore, another way of attaining the pitch attitude necessary to reach the appropriate lift-off speed is to determine the current angle of attack and adjust the flight path angle accordingly. Safe Flight's own prior U.S. Letters Patent No. 2,945,375 ('375 patent) is a displacement type instrument which provides a lift signal. Lift is a function of forward speed and the angle of attack, thus the '375 device provides a measure of the angle of attack. However, reliance on the '375 measuring device in making adjustments produced a phugoid or "roller coaster" type flight path. Errors in acceleration measurement (and, therefore, the '375 lift signal and the angle of attack) were caused by the pitch of the aircraft.
 
 
 28
 As Safe Flight concedes, the '540 patent is a modification of the '375 device accomplished by biasing the '375 lift signal with a ground acceleration signal. The principal parts added to the '375 device are a gyroscope and a pendulous accelerometer. The gyroscope removes the effects of aircraft pitch from the pendulous accelerometer, thus removing the error in acceleration measurement noted above. The forward acceleration signal was added to the lift signal from the '375's lift transducer and the combined signal was displayed on a Fast/Slow meter.
 
 
 29
 The trial court found that a person of ordinary skill in the art prior to 1958 would have no difficulty in realizing that the determination of the forward acceleration would necessitate the removal of the effect of pitch from an accelerometer. The court also found that, to a person of ordinary skill in the art, having the '375 patent before him, this would immediately suggest the use of a gyroscope to remove the pitch from the accelerometer therein described. The prior art U.S. Letters Patent No. 2,942,864 to Sikora taught that a gyroscope could be combined with the pendulous accelerometer to remove the effect of pitch and thus get a signal representative of actual acceleration notwithstanding the pitch of the aircraft.
 
 
 30
 While there is room for debate as to the evidentiary support for these and other questioned findings, we conclude that they are not clearly erroneous. The trial court based its findings primarily upon the device described in claim one of the patent, on the theory that it was probably the broadest claim. We find nothing in the record which convinces us that this procedure was improper.[7]
 
 
 31
 Safe Flight takes issue with several of the trial court's conclusions of law pertaining to counts one and two. We do not find it necessary to place our imprimatur upon all of the questioned conclusions. Perhaps some go too far and perhaps certain of the decisions cited are not in point. What is important, however, is that the district court rigidly adhered to the rules and criteria of the Supreme Court in determining that the questioned patent claims are invalid under 35 U.S.C. Sec. 103.[8]
 
 
 32
 All of the factual inquiries required under the Graham decision, and in Reeves Instrument Corporation v. Beckman Instruments, Inc., 444 F.2d 263 (9th Cir. 1971), in order to resolve the obviousness-non-obviousness dichotomy, were made. Consistent with Reeves, the trial court determination that the '540 patent is obvious took into account the subject matter as a whole and did not rest alone on a consideration of the individual elements of the claimed combination and their individual novelty or lack of novelty.
 
 
 33
 The foregoing discussion renders it unnecessary for us to consider the trial court's determination that some of the questioned claims of the '540 patent are also invalid under 35 U.S.C. Sec. 102(a), and that court's determination that, in any event, the '540 patent was not infringed by the Sperry AT/SC system.
 
 
 34
 This brings us to the issues on appeal peculiar to count three of the amended complaint. Actually there is only one such issue.
 
 
 35
 As noted above, the trial was had only with regard to the validity of the '540 patent (at issue in counts one, two and three), and infringement of that patent by the Sperry AT/SC system (at issue only in counts one and two). These issues were decided adversely to Safe Flight.
 
 
 36
 Thus, apart from the question as to the validity of the '540 patent, the trial involved no issue concerning count three of the amended complaint, and the judgment entered at the close of the trial did not dispose of count three (or counts four, five and six) of the amended complaint. But Safe Flight nevertheless argues that the trial court erred in denying Safe Flight's cross-motion for partial summary judgment on count three.
 
 
 37
 Discussion of this contention requires us to consider the context in which Safe Flight made this cross-motion. MDC first moved for a partial summary judgment dismissing the third count of the amended complaint. In support of this motion, MDC argued that, in view of an indemnity agreement entered into between UCC and MDC, concerning the manufacture of Speed Command Computers by UCC for installation in MDC aircraft, of which agreement Safe Flight had notice, and in view of the terms of the settlement agreement between Safe Flight and UCC in the Seattle case, and by reason of the fact that count three pertains to the installation of UCC's Speed Command Computers in MDC aircraft, MDC has been released and discharged by Safe Flight from any and all claims for such infringement.
 
 
 38
 Safe Flight countered with its crossmotion for a partial summary judgment in Safe Flight's favor on count three. As we construe this motion, Safe Flight sought a ruling that MDC is estopped to question the determination in the Seattle case on patent validity and infringement. The establishment of this estoppel would lay the groundwork for Safe Flight's prayer for damages and injunctive relief on its count three.
 
 
 39
 In support of this motion Safe Flight argued that, by moving for a partial summary judgment in reliance upon the settlement agreement and judgment in the Seattle case, MDC had bound itself to accept the adjudication, in the Seattle case, that the '540 patent is valid and infringed. In addition, Safe Flight argued that, by reason of the privity between MDC and UCC, MDC was estopped by the Seattle judgment, insofar as count three of the amended complaint is concerned, from contesting the validity and infringement determination made in that case.
 
 
 40
 Ordinarily the denial of a motion for summary judgment is not appealable, even where there has been an express direction and determination of the kind called for by Rule 54(b), F.R. Civ.P. This is because an order denying a motion for a summary judgment does not finally dispose of any claim. See 6 Moore's Federal Practice 2790 (2d Ed. 1972). But such an order would be appealable if the effect of the order was to deny a petition for a preliminary injunction. See 28 U.S.C. Sec. 1292(a). Since Safe Flight did seek injunctive relief in its motion for partial summary judgment, we hold that the order denying the motion is appealable.
 
 
 41
 The factual premises of Safe Flight's motion, and of MDC's opposition thereto, are highly complex. The district court did not deny the motion because it was convinced that the motion was without merit, but because the issue presented was so complicated the court did not wish to dispose of it on a motion for partial summary judgment. In effect, the denial was without prejudice. Under the circumstances we believe this was a judicious way to deal with the matter. Safe Flight did not regard the count three request for injunctive relief as urgent. This is indicated by the fact that Safe Flight did not seek an immediate appeal from the order of denial, pursuant to 28 U.S.C. Sec. 1292(a), but was content to raise the question on the main appeal after the trial.
 
 
 42
 We conclude that the district court did not err in denying Safe Flight's motion for partial summary judgment, and that count three remains to be disposed of in further district court proceedings.
 
 
 43
 Safe Flight complains of asserted irregularities in trial procedure, including piecemeal progress of the trial. We have reviewed the circumstances complained of and find nothing indicating an abuse of discretion by the trial court or substantial prejudice to Safe Flight.
 
 
 44
 The judgment and order under review are affirmed and the cause is remanded to the district court for further proceedings on counts three, four, five and six of the amended complaint.
 
 
 
 [1]
 The claims of the '540 patent which Safe Flight alleged were being infringed are claims 1-8, 17, 19, 20, 22 and 26
 
 
 [2]
 The judgment contains the express determination and direction which, under Rule 54(b), F.R.Civ.P., in the absence of abuse of discretion, confers jurisdiction upon this court to entertain an interlocutory appeal. See Zangardi v. Tobriner, 116 U.S.App.D.C. 350, 330 F.2d 224 (1964). Appellees do not assert that there has been an abuse of discretion in entering the Rule 54(b) recital, nor do we find such an abuse
 
 
 [3]
 That suit is entitled Safe Flight Instrument Corporation v. United Control Corporation, et al., Civil Action No. 7268
 
 
 [4]
 In its statement of issues presented for review, Safe Flight said nothing about collateral estoppel. Instead, it queried: "With respect to the same evidence, which of the Findings of Fact . . . [entered in the Seattle case or in the case now before us] . . . are clearly erroneous and which Conclusions of Law concerning the validity of the '540 patent are in error?"
 
 
 [5]
 At the outset of the present trial, the district court announced that if it had a strong view concerning the validity of the patent, it would not be influenced by the finding as to validity in the Seattle case, but that if the court found the issue to be in doubt, the Seattle findings "would constitute make-weight."
 
 
 [6]
 The minimum "unstick" speed is the lowest speed at which one can demonstrate a jet take-off without displaying hazardous characteristics
 
 
 [7]
 We recognize that the foregoing discussion of the findings and evidence is summary in form and omits much that the respective parties rely upon. Since we are affirming, however, it seems to us a more extensive discussion would have little utility. Our conclusion, stated above, is based upon our understanding of the record considered as a whole. In reaching that conclusion we have given due recognition to the opportunity the trial court had, over a period of weeks, to evaluate live testimony, and to query the witnesses on doubtful points
 It should also be added that, in sustaining the questioned findings of fact in this case, we are not holding that the contrary findings in the Seattle case are necessarily clearly erroneous. Each set of findings must be judged by the record in the case in which the findings were entered. As previously noted, the record in the Seattle case is not before us.
 
 
 [8]
 See Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); United States v. Adams, 383 U.S. 39, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966); Anderson's-Black Rock, Inc. v. Pavement Salvage Co., Inc., 396 U.S. 57, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969)