576 F.2d 1340
 197 U.S.P.Q. 849
 SAFE FLIGHT INSTRUMENT CORPORATION, a New York Corporation,
Plaintiff-Appellant,
v.
UNITED CONTROL CORPORATION, a Delaware Corporation and UC
Liquidating Corporation, a Washington Corporation,
Defendants-Appellees.
SAFE FLIGHT INSTRUMENT CORPORATION, a New York Corporation,
Plaintiff-Appellee,
v.
UNITED CONTROL CORPORATION, a Delaware Corporation and UC
Liquidating Corporation, a Washington Corporation,
Defendants-Appellants.
 Nos. 76-2968 and 76-2969.
 United States Court of Appeals,
Ninth Circuit.
 April 6, 1978.
Rehearing Denied in No. 79-2968 May 31, 1978.
 
 Thomas M. Marshall (argued) of Riddell, Williams & Ivie, Seattle, Wash., for plaintiff-appellant.
 Richard S. Phillips (argued) of Wegner, Stellman, McCord, Wiles & Wood, Chicago, Ill., Wilbur J. Lawrence of Lane, Powell, Moss & Miller, Seattle, Wash., for defendants-appellees.
 Appeal from the United States District Court for the Western District of Washington.
 Before KOELSCH and KENNEDY, Circuit Judges, and JAMESON,* District Judge.
 PER CURIAM:
 
 
 1
 The question on this appeal is whether the district court erred in partially granting defendants' motion for relief from a judgment granting plaintiff a permanent injunction.
 
 
 2
 Broadly, the facts are these: In 1967, plaintiff, Safe Flight Instrument Corporation, commenced this action in the United States District Court for the Western District of Washington against defendants United Control Corporation and UC Liquidating Corporation for an injunction and damages resulting from the infringement of its three patents numbered 3,043,540 (the "540 patent"), 3,112,905 (the "905 patent"), and 3,327,972 (the "972 patent").
 
 
 3
 Following a trial, the judge held plaintiff's 540 patent valid and infringed, but ruled that the 905 and 972 patents were invalid and not infringed. But before the ensuing appeals were heard, this court remanded the matter to permit the district court judge to entertain several post-judgment motions.[1]
 
 
 4
 The parties then entered into a written agreement looking to the entry of a stipulated judgment settling the dispute. The formal agreement, following a recital that "as used herein, the term '540' shall be taken to mean an aircraft instrument covered by one or more of the claims of U.S. letters patent 3,043,540, 3,112,905 and 3,327,972," provided that plaintiff's patents numbered 540, 905 and 972 were valid and had been infringed; that defendants would pay plaintiff an agreed sum as damages in return for a complete release and settlement of all claims arising from the use, etc., of the patents, but with the proviso that
 
 
 5
 "10. Upon the expiration of patent 3,043,540, or if patent 3,043,540 is held invalid by a final decision of a court of competent jurisdiction, which decision is unappealed or unappealable, United Control shall thereafter, provided two years have passed from date of this agreement, have the right to make, use and sell '540' devices free of any charges or claims of infringement by Safe Flight."
 
 
 6
 The district judge accepted the parties' stipulation and Settlement Agreement and rendered judgment accordingly, awarding plaintiff.$2.5 million in damages and granting it a permanent injunction.[2]
 
 
 7
 The Washington suit was not the only litigation in which plaintiff was involved. In 1968, plaintiff filed an action in the United States District Court for the Central District of California, charging persons other than these defendants with infringement of its 540 patent. This latter suit was entirely separate from the one in Washington against defendants and was pending but untried when the parties in this suit entered into their Settlement Agreement. When the California suit was tried, the judge there held the 540 patent invalid. Upon appeal, we affirmed and certiorari was thereafter denied. Safe Flight Instrument Corp. v. McDonnell-Douglas Corp., 482 F.2d 1086 (9th Cir. 1973), cert. denied, 414 U.S. 1113, 94 S.Ct. 843, 38 L.Ed.2d 740 (1973).
 
 
 8
 Following these dispositions of the California suit and after more than two years had passed since the date of the parties' Settlement Agreement, defendants' successor in interest (Sundstrand) moved the Washington District Court to vacate its injunction. As grounds, defendants asserted that the contingency provided for in paragraph 10 of the Settlement Agreement had occurred and thus, to paraphrase the language of Rule 60(b)(5), F.R.Civ.P., it was no longer equitable to accord the injunction, entered pursuant to that agreement, further effect.[3]
 
 
 9
 The district judge, following a hearing, concluded that "the settlement agreement entered into by the parties on July 13, 1968, was the underlying basis upon which the Consent Judgment was presented to (the district judge) and signed that same date." He further concluded that, in light of paragraph 10 of the Settlement Agreement and the affirmance by the Court of Appeals of the final judgment entered in the California suit adjudicating the 540 patent invalid, the permanent injunction granted pursuant to the prior consent judgment was "no longer necessary or valid, and is of no further force and effect." He entered an order vacating the injunction, but solely as to the 540 patent. Both parties have appealed plaintiff from the partial vacation of the injunction and defendants from the refusal to vacate the injunction in its entirety.
 
 
 10
 The power of a court of equity to vacate or otherwise modify the prospective effect of its decrees is too well-established to merit extended discussion. State of Pennsylvania v. Wheeling & Belmont Bridge Co., 18 How. 421, 15 L.Ed. 435 (1855); 7 Moore's Federal Practice P 60.16(6) and cases cited at n. 1. The power to effect such a modification, "inherent in the jurisdiction of the chancery" (United States v. Swift & Co., 286 U.S. 106, 114, 52 S.Ct. 460, 462, 76 L.Ed. 999 (1932)) is, as indicated, explicitly conferred on the district courts by the terms of subsection (b)(5) of Rule 60, F.R.Civ.P. Its exercise lies within the discretion of the trial court, guided by traditional principles of equity jurisprudence (System Federation v. Wright, 364 U.S. 642, 648, 81 S.Ct. 368, 5 L.Ed.2d 349 (1961); United States v. Swift & Co., supra, 286 U.S. at 115, 52 S.Ct. 460) and a reviewing court will not disturb the trial court's disposition except upon demonstrated abuse (Bank of America Nat'l Trust & Sav. Ass'n v. Mamakos, 509 F.2d 1217 (9th Cir. 1975) and cases cited at 1219).
 
 
 11
 The Settlement Agreement and other papers before the district court manifest the parties' formal recognition that the 540 patent might conceivably be declared invalid. That contingency having occurred in the course of the California suit, the district judge in the Washington suit did not abuse his discretion in granting defendants' application for post-judgment relief in order that the unmodified decree should not obstruct full effectuation of the parties' agreement and thereby be "turned through changing circumstances into an instrument of wrong." United States v. Swift & Co., supra, 286 U.S. at 115, 52 S.Ct. at 462.
 
 
 12
 Plaintiff vigorously contends that the district judge, in granting defendants Rule 60(b)(5) relief on the basis of the judgment in the California suit declaring the 540 patent invalid, in effect nullified its own prior decree upholding the 540 patent. From this premise, plaintiff argues that it has been collaterally estopped by the judgment of invalidity entered in the California suit and should at the least have been permitted to demonstrate before the Washington district court that it did not have a "fair opportunity procedurally, substantively and evidentially to pursue (its) claims" in the California suit, citing Blonder-Tongue Laboratories v. University of Illinois Foundation, 402 U.S. 313, 333, 91 S.Ct. 1434, 1445, 28 L.Ed.2d 788 (1971). But plaintiff's argument, while ingenious, has no application to the facts of this case.
 
 
 13
 In seeking relief from the prospective effect of the consent judgment, defendants made no attempt to invoke collaterally the California judgment to invalidate the Washington court's decree adjudicating the patents valid. Instead, defendants relied on the subsequent judgment as the materialization of a contingency expressly provided for by paragraph 10 of the parties' settlement agreement. The relief granted below was founded upon the express agreement of the parties as reflected in the Settlement Agreement; that relief simply holds plaintiff to its bargain and is hardly inconsistent with equitable principles. We thus have no occasion in this case to consider "the inevitable problems that can arise in determining the effect of the determination of (a patent's) invalidity upon a prior judgment of validity if collateral estoppel is applied to all later suits." Blumcraft of Pittsburgh v. Kawneer Co., 482 F.2d 542, 549 (5th Cir. 1973).
 
 
 14
 Similarly, there is no merit in plaintiff's contention that the consensual nature of the Washington judgment somehow precludes relief under Rule 60(b)(5), where otherwise appropriate. Plaintiff contends that the revision of the prospective features of the consent decree impairs the res judicata effect to which such judgments are entitled. It is true that, as a general rule, consent decrees are accorded res judicata effect. See, e. g., Wallace Clark & Co. v. Acheson Industries, 532 F.2d 846 (2d Cir. 1976), cert. denied, 425 U.S. 976, 96 S.Ct. 2177, 48 L.Ed.2d 800 (1976), and cases cited, 532 F.2d at 848. But the revision of the decree exacted by the district court in this case was consistent with the familiar distinction between the conclusive, res judicata effect properly accorded decrees adjudicating accrued rights and those prospective features of a decree "that involve the supervision of changing conduct or conditions and are thus provisional and tentative." United States v. Swift & Co., supra, 286 U.S. at 114, 52 S.Ct. at 462. As the Court observed in System Federation v. Wright, supra, 364 U.S. at 647-48, 81 S.Ct. at 371: "A balance must . . . be struck between the policies of res judicata and the right of the court to apply modified measures to changed circumstances." Here, where the possibility of changed circumstances was expressly provided for by the very terms of the parties' Settlement Agreement, we are clear that the district judge did not abuse his discretion in modifying the prospective features of the decree to conform thereto.
 
 
 15
 However, we are also clear that the district judge should have granted defendants' motion in toto. The Settlement Agreement clearly and unambiguously covers all three patents, not simply the 540 patent. Not only does the recital (quoted earlier) in the Settlement Agreement state that the term "540" was intended to cover the other two patents and indicate that it was merely a shorthand method of referring to all patents in suit, but paragraph 10 is also consistent with such an intent: "(u)pon the expiration of patent 3,043,540 or if patent 3,043,540 is held invalid . . . (defendants) shall . . . have the right to make, use and sell '540' devices free of any charge or claim of infringement by Safe Flight." We think it plain that the draftsmen's careful use of the term " '540' devices" in paragraph 10 refers back to the definition of the term " '540' " in the recital quoted earlier and includes all three patents in issue. Had the intention of the parties been otherwise, that is, had they contemplated that upon the occurrence of the conditions precedent specified in paragraph 10, defendants could use, etc., only the 540 patent free of any claim of infringement, it would have been a simple matter to say so. But this was not done.
 
 
 16
 Moreover, paragraph 10 provides that "(u)pon the expiration of patent 3,043,540 . . . (defendants) shall thereafter . . . have the right to make, use and sell '540' devices . . . ." (Our emphasis.) Obviously, if the parties had intended the term "540" as used in paragraph 10 to mean only patent number 3,043,540, the expiration provision would have been unnecessary. There is nothing in the agreement to show any intent other than one to enable defendants or its successor to manufacture, etc., aircraft instrument devices covered by any of the three patents in suit upon the occurrence of the conditions prescribed in paragraph 10.
 
 
 17
 The final paragraph of the order appealed from is accordingly modified to read as follows:
 
 
 18
 ORDERED that the injunction provided for in Paragraph 7 of the Judgment entered in the above-entitled case on July 31, 1969, be and the same is hereby VACATED."
 
 
 19
 As thus modified, the judgment of the district court is affirmed.
 
 
 
 *
 The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation
 
 
 [1]
 Unpublished order of May 27, 1969. See Safe Flight Instrument Corp. v. McDonnell-Douglas Corp., 482 F.2d 1086, 1088 (9th Cir. 1973), cert. denied, 414 U.S. 1113, 94 S.Ct. 843, 38 L.Ed.2d 740 (1973)
 
 
 [2]
 In addition, plaintiff agreed to pay defendants $1.5 million for the going business of defendants in the infringing devices
 
 
 [3]
 Rule 60(b) provides in pertinent part:
 "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: . . . (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application . . . ."