JAMES EDWARD RICHARDS, III,  )
                              )
        Plaintiff/Appellant,  )          Appeal No.
                              )          01-A-01-9708-PB-00450
v.                            )
                              )          Davidson Probate
CYNTHIA ANN READ,             )          No. 74910
                              )
        Defendant/Appellee.   )

FILED

July 27, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE


APPEAL FROM THE DAVIDSON COUNTY PROBATE COURT

AT  NASHVILLE, TENNESSEE


THE HONORABLE FRANK G. CLEMENT, JR., JUDGE



JOHN J. HOLLINS, SR.
Hollins, Wagster & Yarbrough, P.C.
424 Church Street, Suite 2210
Nashville, Tennessee  37219

J. RUSSELL HELDMAN
Williams & Heldman
320 Main Street, Suit 101
Franklin, Tennessee  37064
        ATTORNEYS FOR PLAINTIFF/APPELLANT


MARY ANN KEVIL
Bellevue Professional Center
237 Old Hickory Blvd., Suite 201
Nashville, Tennessee  37221-1353
        ATTORNEY FOR DEFENDANT/APPELLEE




AFFIRMED IN PART,
REVERSED IN PART,
AND REMANDED



WILLIAM B. CAIN, JUDGE

# O P I N I O N

In this case, the appellant, having voluntarily legitimated a child born out of wedlock, seeks by Rule 60 motion to be relieved of child support obligations because blood tests have now established conclusively that he is not the biological father of the child. The trial court dismissed the appellant's petition for relief from the order adjudicating him to be the child's father. On appeal, we reverse that decision and remand this case for further proceedings in conformity with this opinion.

In 1982 Appellant, James Edward Richards, III, and Appellee, Cynthia Ann Read, were both employees of Tennessee Wholesale Drug Company which was primarily owned and operated by Mr. Richards' father. The parties began seeing each other in December of 1982 at which time they began a sexual relationship. In August of 1983, Ms. Read informed Mr. Richards that she was pregnant and led him to believe that he was the father of the child. Mr. Richards greatly feared the reaction of his father if he discovered that Mr. Richards was having a sexual relationship with a co-employee at the company.

On May 22, 1984, approximately six weeks after the child, Britnee, was born, the parties signed under oath and filed in the Probate Court for Davidson County, Tennessee a joint petition to legitimate the child and have her birth certificate reflect the father's name as James Edward Richards, III. Both parties were represented by counsel in this proceeding and the joint petition provided in part:

> 6.　The petitioners have reached an agreement concerning the support of the minor child, specifically:
> A. James Edward Richards, III will pay to Cynthia A. Read all medical bills resulting from the delivery of Britnee Margaret Alma Read which are not paid by medical insurance. This amount total[s] One Thousand, Thirteen Dollars and 34/100 ($1,013.34).
> B. James Edward Richards, III, will pay to Cynthia A. Read, the sum of Thirty Thousand Dollars ($30,000.00) for the use and benefit of Britnee Margaret Alma Read, which represents full and final discharge of all child support obligations James Edward Richards, III may have regarding his support

of said minor child during her minority.

> C. Cynthia A. Read agrees to accept Thirty Thousand Dollars ($30,000.00) as a full and final settlement of child support obligations of James Edward Richards, III and, by her acceptance of said sum, agrees to hold James Edward Richards, III harmless from any future claim for child support ar[is]ing out of any obligation he may have to Britnee Margaret Alma Read.
>
> D. James Edward Richards, III, will pay all attorney fees and costs of the legitimation procedure.

The prayers for relief in this joint petition of the parties sought in part:

> an Order reflecting the Court's approval of the agreement entered into by the parties wherein James Edward Richards, III shall pay to Cynthia A. Read the total sum of $30,000.00 representing a full and final settlement of all child support obligations James Edward Richards, III shall have to Cynthia A. Read or the minor child of the parties; the sum of $1,013.34 representing full payment of all medical bills, over insurance, incurred by Cynthia A. Read for the birth of said minor child; all attorney fees and court costs herein.

An order was entered this same May 22, 1984 by James R. Everett, Jr., Judge of the Probate Court of Davidson County, approved for entry by counsel for both parties legitimating Britnee and approving the provisions of the joint petition.

Neither prior to executing the joint petition nor subsequent thereto until February 26, 1992 did Mr. Richards seek any blood tests for the establishment of paternity. In this interim period, Mr. Richards continued an off and on relationship with Ms. Read including continued sexual relations, and he developed a close bond with Britnee. Despite the provisions of the agreed order of May 22, 1984, he continued to support Britnee and Ms. Read in a more than adequate fashion until he developed a serious relationship with his present wife in April of 1991. The blood tests of February 26, 1992 were done without the knowledge of Ms. Read. These tests indicated that Mr. Richards was not the father of Britnee.

On October 21, 1992 Appellant filed a petition seeking essentially to enforce the settlement provisions of the May 22, 1984 order and relieve him of any further support obligation to Britnee. Ms. Read answered and counter-

-3-

petitioned on November 20, 1992 seeking essentially that the support order of May 22, 1984 be modified to require Mr. Richards to comply with guideline child support, both retroactively and until Britnee was legally emancipated. The case at issue languished in the trial court for various reasons before being heard before Honorable Frank G. Clement, Jr., Probate Judge on March 11, 1997. Following this hearing, the trial court indicated its intention to deny all relief to Mr. Richards in language that aptly states his frustration:

> I have to say that there is no good answer here. This is a case that I've struggled with before today to try to figure out is there something sensible that I can do both to follow the law and to apply common sense and a humanitarian approach for the best interest of this young lady, Britnee, and the answer is no, there is no good solution.
>
> And I can assure you that the decision I'm going to make today I don't like but I also don't like the alternatives that I have, either. Not a single one of them would be on my list of preferences.
>
> So if you're unhappy with my decision, I join with you because I'm unhappy with it, too. Because I think it's a travesty of what has occurred in this situation and the ramifications that may result to this child.
>
> Whose fault it is, I put at the feet of both the mother and the purported father and their own acts of self-service; in his case, putting his pocketbook before the best interest of the child.
>
> The only way I can set aside a judgment in this case is to find that some prerequisites apply that would allow the Petitioner the limited relief and Rule 60 and the independent action that really is parallel to Rule 60 fully contemplate that Courts should be available to set aside the judgments when certain special circumstances exist that justify it, otherwise, Courts should stand firmly on the proposition that judgments, once they have matured, and whether it be by 30 days or one year or two years, depending upon the criteria, that they should stand so that peoples['] rights will have some stability.
>
> Clearly, I have evidence before me today that Mr. James Edward Richards, III, is not the father of the young lady who is the subject of this litigation and, I must admit, it troubles me to allow any suggestion to go forward that would suggest that he is the father when clearly he isn't.
>
> However, it was not this Court that made the decision what, 13 or 14 years ago that it would be in his best interest to sign an agreement by which hopefully with the payment of 35 or $36,000 he might be able [to] put this embarrassing situation behind him so that his father wouldn't fire him and other unfortunate things wouldn't result.

From this point forward the record gets a little confused. Another hearing was held July 14, 1997, with all attorneys and the guardian ad litem for Britnee Richards being present. Extensive presentations of counsel are of record but no testimony. The order reflecting this July 17, 1997 hearing was not entered until December 30, 1997, and provides in part as follows:

> Based on the arguments of counsel, the exhibits entered, the pleadings and the record as a whole, the Court finds that the Respondent, Cynthia Ann Read, shall be awarded a judgment for arrearage of child support in the amount of Two Hundred Eight Thousand Nine Hundred Thirteen and 81/100 Dollars ($208,913.81) against the Petitioner, James Edward Richards, III.
>
> The Court further finds that the Petitioner, James Edward Richards, III, shall pay directly to the Respondent, Cynthia Ann Read, the sum of Fifty Eight Thousand and no/100 Dollars ($58,000.00) of said arrearage judgment based on a calculation of One Thousand and no/100 Dollars ($1,000.00) per month for the period of time from July, 1992 through May, 1997 for the Respondent having solely supported the minor child during said time period.
>
> The Court further finds that the balance of said judgment, One Hundred Fifty Thousand Nine Hundred Thirteen and 81/100 Dollars ($150,913.81), shall be paid directly into the Circuit Court Clerk's Office and a trust shall be established in the minor child's name of Britnee Margaret Alma Richards, with the Circuit Court Clerk's office managing said account for the benefit of the minor child.
>
> The Court further finds that the Petitioner shall pay the sum of Two Thousand Two Hundred Eighty One and no/100 Dollars ($2,281.00) per month as support and maintenance for the minor child. The Court finds that the Petitioner shall pay directly to the Respondent One Thousand Four Hundred Forty and no/100 Dollars ($1,440.00) and further that the Petitioner shall pay the balance of Eight Hundred Forty One and no/100 Dollars ($841.00) into the trust account which shall be maintained by the Circuit Court Clerk for the benefit of the minor child.
>
> Said child support payments shall begin on August 15, 1997 and shall continue on the fifteenth (15th) day of each month thereafter. The Court finds that this sum represents 21% of the Petitioner's average income of One Hundred Sixty Five Thousand and no/100 dollars ($165,000.00), in accordance with the [f]ederally mandated Child Support Guidelines. The Court further finds that the Petitioner's oral Motion for a downward deviation in the child support is not well taken and therefore said Motion is denied. The Court further finds that the Respondent's oral Motion for an upward deviation is also not well taken and therefore said Motion is denied.
>
> . . .
>
> It is therefore ORDERED, ADJUDGED and DECREED that

the Respondent, Cynthia Ann Read, shall be awarded a judgment for arrearage of child support in the amount of Two Hundred Eight Thousand Nine Hundred Thirteen and 81/100 Dollars ($208,913.81) against the Petitioner, James Edward Richards, III.

It is further ORDERED, ADJUDGED and DECREED that the Petitioner, James Edward Richards, III, shall pay directly to the Respondent, Cynthia Ann Read, the sum of Fifty Eight Thousand and no/100 Dollars ($58,000.00) of said arrearage judgment based on a calculation of One Thousand and no/100 Dollars ($1,000.00) per month for the period of time from July, 1992 through May, 1997 for the Respondent having solely supported the minor child during said time period.

It is ORDERED, ADJUDGED and DECREED that the balance of said judgment, One Hundred Fifty Eight Thousand Nine Hundred Thirteen and 81/100 ($158,913.81), shall be paid directly into the Circuit Court Clerk's office and a trust shall be established in the minor child's name of Britnee Margaret Alma Richards, with the Circuit Court Clerk's office managing said trust account for the benefit of the minor child.

It is further ORDERED, ADJUDGED and DECREED that the Petitioner shall pay the sum of Two Thousand Two Hundred Eight[y] One and no/100 Dollars ($2,281.00) per month as support and maintenance for the minor child.

It is ORDERED, ADJUDGED and DECREED that the Petitioner shall pay directly to the Respondent One Thousand Four Hundred Forty and no/100 Dollars ($1,440.00) and further that the Petitioner shall pay the balance of Eight Hundred Forty One and no/100 Dollars ($841.00) into the trust account which shall be maintained by the Circuit Court Clerk [for] the benefit of the minor child. Said child support payments shall begin on August 15, 1997 and shall continue on the fifteenth (15th) day of each month thereafter. The Court finds that this sum represents 21% of the Petitioner's average income of One Hundred Sixty Five Thousand and no/100 Dollars ($165,000.00), in accordance with the [f]ederally mandated Child Support Guidelines.

Further resulting from the July 14, 1997 hearing, the trial court entered a "Memorandum Opinion and Order" also dated December 30, 1997. In this latter document the court denied Mr. Richards' application for Rule 60 relief holding that the "hold harmless" portion of the May 22, 1984 agreed order violated public policy and further denying Mr. Richards relief from prospective application of child support obligations.

The method used by the trial judge to arrive at the arrearage figures in the July 14, 1997 order (actually entered December 30, 1997) is best shown by a

portion of the proceedings at the July 14 hearing wherein the guardian ad litem, Ms. Dumas, addressed the court:

MS. DUMAS: Your Honor, the guidelines and even prior to '84, give Your Honor a great deal of leeway that you can deviate upward or downward. I think both parties are right. There's reason to deviate upwards and reason to deviate downwards. I think Your Honor ought not to do either one, quite frankly.

Mr. Richards doesn't visit and he certainly doesn't contribute to the child's welfare at this point and that's certainly one of the reasons why you could deviate upward.

I just don't think that his income, if you stick to the basics, that it's necessary. Mr. Hollins wants you to deviate downward because he makes a great deal of money and therefore you ought to give him a break. I don't think that applies either. I think if Your Honor applies 21 percent or applies the guidelines, it's sufficient to take care of this child's well being.

I have asked and asked and asked for a number and I have -- basically the last thing that I got was that Mr. Richards would be asking for a credit of $115,559.23. I told Mr. Hollins, Jr. I would not oppose those numbers, would not oppose credit for those items that he says he basically can show. It was my understanding or it was my attitude that that will take care of '84 through '90. And we would be looking at that for that time period. I don't have income numbers for those time periods. I only have them for two years. So I can't look in and say we're just looking at 21 percent. But it averages out to be approximately $1,700 per month for that time period.

After that, after you get into 1990 and you go forward, I look to Ms. Kevil's calculations and what I have come up with that I would say that I think is the amount that's owed in back child support is different. I think what's owed in back child support is $286,435.61.

THE COURT: 286,435.61?

MS. DUMAS: How did I arrive at the calculation? If you take Ms. Kevil's $345,714.84, if I go back in and add back in the amounts of contributions that she has given him credit for in those first four paragraphs, I add those back in and then subtract out the $115,559.23 of credit which Mr. Hollins has said they are due, I arrive at 286,435.61.

Now, in saying that I also believe quite frankly that another credit should be given. In 1996 -- and this is an odd thin[g] for a guardian to say but I'm going to say it anyway. In 1996 Mr. Richards made 1.2 million dollars. I don't believe the guidelines really and truly anticipate 21 percent of 1.2 million dollars going in. I'm taking off what he gave after his capital gains completely and just using the figure of his income, of his salaried income for that year and that would give Mr. Richards another credit of $77,521.80 cents. So I would ask the Court to award in back child support $208,913.81.

The end result of all of these trial court adjudications is that Mr. Richards is ordered to pay $2,281.00 per month in continuous child support until Britnee is emancipated with $1,440.00 per month being paid to Ms. Read and $841.00 per month being added to the trust account for Britnee held by the Circuit Court Clerk. He is further ordered to pay total arrearage child support in the amount of $208,913.81 with $58,000.00 of that sum to be paid directly to Ms. Read representing $1,000.00 per month from July, 1992 through May of 1997. The remaining $150,913.81 is to be paid to the trust held by the Circuit Court Clerk in the name of Britnee. From this judgment Mr. Richards appeals.

The first issue asserted on appeal by Mr. Richards is as follows:

> Whether the trial court erred in refusing to relieve petitioner, James Edward Richards, from the order entered May 22, 1984, adjudging petitioner to be the natural father of Britnee Richards after the trial court had made a determination that petitioner, James Edward Richards, was not the natural father of Britnee Richards.

To answer this question, it is first necessary to determine the status of the May 22, 1984 order at the various stages of this proceeding. For reasons hereinafter stated this court concludes that the only avenue for relief available to Mr. Richards in this case is Tennessee Rules of Civil Procedure Rule 60.02(4) because it is "no longer equitable" that said order should have "prospective application." So it is that up until the time of the filing by Mr. Richards of his petition for relief from the May 22, 1984 consent order (October 21, 1992), he is bound by the adjudication legitimating Britnee Richards at least as far as child support duties are concerned.

The trial court relying on *Witt v. Witt*, 929 S.W.2d 360 (Tenn.App.1996) and *Straub v. B. M. T. by Todd*, 626 N.E.2d 848 (Ind.App.1994), [1] held the child support provisions and the "hold harmless" provisions of the May 22, 1984 consent decree to be void as against public policy. We concur in this judgment. As stated in *Witt*.

---

[1] The Indiana Supreme Court granted transfer of this opinion from the Court of Appeals and issued *Straub v. B.M.T. by Todd*, 645 N.E.2d 597 (Ind.1994), which supplanted the lower court opinion with an even stronger statement of public policy against such agreements.

It seems abundantly clear that since time immemorial it has been the public policy of this state that a parent is under a duty to support his children. Indeed, it has been declared a criminal offense by the legislature for a parent to knowingly fail to support his children. Further evidence of the public policy of the State as established by our legislature may be found in T.C.A.§§ 36-2-101, et seq., (paternity proceedings) and T.C.A. §§ 36-5-101 requiring parents to support their children and by the adoption of the child support guidelines promulgated by the Department of Human Services.

*Witt*, 929 S.W.2d at 362.

Thus prior to the October 21, 1992 filing by Mr. Richards of his petition to be relieved of child support, we have:

1.    A valid consent decree of May 22, 1984 legitimating Britnee Richards and declaring Mr. Richards to be her natural father.

2.    A void decree of May 22, 1984 fixing his lifetime child support obligation at $30,000 plus expenses of birth.

3.    A void May 22, 1994 decree compelling Ms. Read to hold Mr. Richards harmless from further support obligations for Britnee.

4.    A continuing child support duty of Mr. Richards not reduced to an adjudication judgment by the court.

The record is clear that regardless of the consent decree of May 22, 1984, Mr. Richards not only established a continuing relationship with Britnee but also continued his relationship with Ms. Read and continued to support both Britnee and Ms. Read voluntarily at least through 1989. Both Ms. Read and the guardian ad litem acknowledge this support in the record and child support for Britnee is not sought for any period prior to January 1, 1990. So it is that the period January 1, 1990 through October 21, 1992 is the period predating the filing of the petition by Mr. Richards for which child support is retroactively sought. During this entire period child support guidelines were in effect. *Nash v. Mulle*, 846 S.W.2d 803 (Tenn.1993).

We are confronted with a unique situation. Appellant seeks relief under Tennessee Rules of Civil Procedure Rule 60.02(4) because "it is no longer

equitable that a judgment should have prospective application."  He seeks equitable relief from the prospective application of the portions of the May 22, 1984 order legitimating Britnee.  He seeks enforcement of the portions of that order relieving him of future child support and providing that Ms. Read hold him harmless for all future child support obligations.  These latter two provisions of the May 22, 1984 order are both against the public policy of the State of Tennessee.  So it is that we have no operative child support order of the court in effect for the period May 22, 1984 until October 21, 1992.  The legitimation provisions of the May 22, 1994 agreed order are valid and offend no public policy of Tennessee.  This legitimation triggers the long settled civil liability of a father for the support of his children.  *Evans v. Evans*, 125 Tenn. 112, 140 S.W. 745 (1911); *Damron v. Damron*, 212 Tenn. 14, 367 S.W.2d 476 (1963); Tenn. Code Ann. § 36-5-101 (Supp.1998); Tenn. Code Ann. § 36-2-203(b)(2)(1996).

Appellant and Appellee entered into the agreed order on May 22, 1984 providing, in part, as follows:

> IT IS FURTHER ORDERED that James Edward Richards, III shall pay to Cynthia A. Read the lump sum of $30,000 as full and final settlement of all child support obligations which James Edward Richards, III has to Cynthia A. Read or the minor child, Britnee Margaret Alma Read, now Richards, and FURTHER *that Cynthia A. Read shall hold James Edward Richards, III harmless for any further claim for support obligations pertaining to said minor child.*

It cannot be equitable that a violation of public policy can be effective to relieve Mr. Richards of his duty to support Britnee after effective legitimation at least for the period up until October 21, 1992 when he filed the petition to be relieved of such obligations.  As ancient as equity itself is the maxim "he who seeks equity must do equity."  As this court has stated:

> The maxim that he who seeks equity must do equity is fundamental, and no principle is better settled than that a court of chancery in granting equitable relief to a complainant will require of him whatever the defendant may, in good reason and good conscience, be entitled to in reference to the subject matter of the suit.  The condition thus imposed upon the complainant is, as it were, the price of the decree which the court gives him.

*East Tenn. and Western N. C. Ry. Co. v. Robinson*, 86 S.W.2d 433, 439

(Tenn.App.1935).

The trial judge accepted evidence as to the earnings of Mr. Richards from the period 1990 to 1997 in arriving at an arrearage child support figure of $208,913.81. Included in this evidence is support for an arrearage of $14,209.92 for the calendar year 1990, $37,718.40 for the calendar year 1991 and $36,149.04 for calendar year 1992. On an annualized basis this would result in an arrearage figure of $29,117.31 for the period January 1, 1992 through October 21, 1992 which is the date on which Mr. Richards filed his petition for relief on the grounds that Britnee was not his biological child. The total child support payment that was therefore found to be the duty of Mr. Richards for the period January 1, 1990 through October 21, 1992 is $98,108.10. The evidence does not preponderate against this finding of fact and we are in agreement with it.

Appellant is entitled to relief from the prospective duty to pay child support under policies articulated in *Harmon v. Harmon*, No. 02A01-9709-CH-00212, 1998 WL 835563 (Tenn.App. Dec. 3, 1998) and *Granderson v. Hicks*, No. 02A01-9801-JV-00007, 1998 WL 886559 (Tenn.App. Dec. 18, 1998). These decisions are from the Western Section of the Court of Appeals and were followed on January 25, 1999 by the opinion of this court in *White v. Armstrong*, No. 01-A-01-9712-JV-00735, 1999 WL 33085 (Tenn.App. Jan. 27, 1999). This case was argued before the bar of the Court of Appeals on February 2, 1999, barely a week after the release of this court's opinion in *White v. Armstrong*. All counsel were at a disadvantage in having only last minute access to this opinion bearing heavily on the same issues. Indeed, except for the material wealth of Mr. Richards, there is no difference between the case at bar and *White v. Armstrong*. This court found no fraud in the *White* case and we agree with the finding of the trial court in the case at bar that fraud was not involved.

Daniel White, Jr. was born in June 1991 and Mr. White waived his right to blood, genetic, or DNA testing. At Mr. White's insistence, a legitimation order was issued by the Juvenile Court of Davidson County on January 5, 1994 finding him to be the father of Daniel White, Jr. Nearly four years later Mr. White obtained blood, genetic and DNA testing which categorically excluded the

possibility that Mr. White could be Daniel's biological father.  The trial court denied relief to Mr. White and this court reversed under Rule 60.02(4) holding that it was no longer equitable for the legitimation order to have prospective effect.

The discussion in *White* is comprehensive and convincing:

Tenn. R. Civ. P. 60.02(4) permits courts to relieve a party from a final judgment when "it is no longer equitable that the judgment should have prospective effect."  The relief available under Tenn. R. Civ. P. 60.02(4) applies to judgments that have prospective affect, not to those that remedy past wrongs.  *See Maraziti v. Thorpe*, 52 F.3d 252, 254 (9th Cir. 1995); *In re Moody*, 849 F.2d 902, 906 (5th Cir. 1988). This sort of relief is appropriate when a change of circumstances had occurred that would render continued enforcement of the judgment inequitable. *See DeFilippis v. United States*, 567 F.2d 341, 343-44 (7th Cir. 1977); *Keith v. Volpe*, 960 F. Supp. 1448, 1457-1458 (C.D. Cal. 1997).

The force behind Tenn. R. Civ. P. 60.02(4) is derived from the historic power of a court of equity to modify its decree in light of changed circumstances. *See* 10A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* §2863, at 336 (2d ed. 1995).  As Justice Cardozo recognized, "a court does not abdicate its power to revoke or modify its mandate, if satisfied that what it has been doing has been turned through changing circumstances into an instrument of wrong." *United States v. Swift & Co.*, 286 U.S. 106, 114-15, 52 S. Ct. 460, 462 (1932). Changes in circumstances warranting relief under procedures akin to Tenn. R. Civ. P. 60.02(4) include the passage of subsequent legislation, *see Protectoseal Co. v. Barancik*, 23 F.3d 1184, 1187 (7th Cir. 1994), a change in the decisional law, *see Thericault v. Smith*, 523 F.2d 601, 602 (1st Cir. 1975), and a change in operative facts. *See Small v. Hunt*, 98 F.3d 789, 797 (4th Cir. 1996).

When determining whether an order or judgment has prospective application, federal courts examine whether the order involves supervision by the court of changing conduct or conditions. *See Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 131 F.3d 625, 630 (7th Cir. 1997); *Twelve John Does v. District of Columbia*, 841 F.2d 1133, 1139 (D. C. Cir. 1988).  A child support order certainly involves continued close supervision by the issuing court because the issuing court retains jurisdiction over the order to modify it in the event of a change in circumstances or to impose sanctions for failure to pay.   The juvenile court's order directing Mr. White to pay child support for Daniel was just such an order of prospective application because, under the applicable statutes at the time, it remained in the court's control so that the court could modify it as necessary upon the showing of a substantial and material change of circumstances. *See* Tenn. Code

Ann. § 36-2-203(b)(2) (repealed 1997) (providing that support orders issued during a paternity proceeding were governed by the same provisions that deal with child support in the context of divorce or separation). Accordingly, the juvenile court had the power to modify or vacate its January 5, 1994 order directing Mr. White to pay child support if it determined that it would no longer be equitable that this order have prospective effect.

## B.

We turn next to the question of whether Mr. White should be prevented from pursuing relief from the juvenile court's January 5, 1994 order because he voluntarily legitimated Daniel in 1994. Under the facts of this case, we have concluded that Mr. White's actions in late 1993 and early 1994 should not prevent him from now seeking prospective judicial relief from his child support obligation.

Mr. White's motivation to legitimate Daniel in 1993 remains somewhat unclear. Accrediting his testimony, Mr. White wanted to do the right thing because he believed that he was the boy's biological father. Accrediting Ms. Armstrong's testimony that she told Mr. White that she did not know who the child's biological father was, Mr. White could have been attempting to establish some legally recognized relationship with the boy because he feared that his separation from Ms. Armstrong would sever his connection with Daniel. In either case, Mr. White was simply attempting to avoid the public humiliation and embarrassment that would follow the revelation that he was not the father of either of the two boys he thought were his sons. He was also seeking to establish a relationship with the boy that Ms. Armstrong could not capriciously undermine. This conduct is not the sort of fraud on the court that should prevent Mr. White from seeking prospective relief based on the irrefutable, newly discovered evidence that he is not the child's biological father.

## C.

We turn finally to the issue of whether the irrefutable evidence that Mr. White is not Daniel's biological father provides sufficient grounds to excuse Mr. White prospectively from his support obligation. In two cases this court has upheld the use of Tenn. R. App. P. 60.02(5) to grant prospective relief from a paternity order. In one case, the person seeking relief asserted that he had been fraudulently induced by the child's mother to consent to the entry of the paternity order. *See Tennessee Dep't of Human Servs. v. Johnson*, 1986 WL 1873, at *1. In the second case, the juvenile court had entered conflicting orders determining that two different men were the child's biological father. *See Johnson v. Johnson*, No. 02A01-9605-JV-00123, 1997 WL 271787, at *3 (Tenn. Ct. App. January 7, 1997) (No Tenn. R. App. P. 11 application filed).

In both cases in which this court has approved granting post-

judgment relief from a paternity order, we have emphasized that "it is of overriding importance . . . that one conclusively established in law not to be the father of a child be not declared as the father of that child." *Johnson v. Johnson*, 1997 WL 271787, at *3; *Tennessee Dep't of Human Servs. v. Johnson*, 1986 WL 1873, at *5. The result in these cases is consistent with cases from other jurisdictions that have used procedures similar to Tenn. R. Civ. P. 60.02(4) to relieve a man from the prospective operation of a child support order when conclusive proof established that he was not the father of the child. *See Alabama ex rel. G.M.F. v. W.F.F.*, No. 2950647, 1996 WL 697995, at *3 (Ala. Civ. App. Dec. 6, 1996); *Crowder v. Commonwealth ex rel. Gregory*, 745 S.W.2d 149, 151 (Ky. Ct. App. 1988); *Cuyahoga Child Support Enforcement Agency v. Guthrie*, No. 72216, 1997 WL 607530, at *2 (Ohio Ct. App. Oct. 2, 1997).

*White v. Armstrong*, No. 01A01-9712-JV-00735 at 5-7, 1999 WL 33085 at * 3-5 (footnotes omitted).

The court in *White v. Armstrong* also asserted that relief under Rule 60.02(4) should not be granted without an analysis of the effect on all parties. As to the effect of such relief on Mr. Richards, it is obvious that he stands much to gain by being relieved of future child support obligations and a substantial majority of the arrearage judgment rendered against him. As to the effect on Ms. Read, it is obviously detrimental but she was just as much a part of violating public policy in Tennessee as was Mr. Richards. She is also entitled to seek relief by attempting to compel the biological father of Britnee to provide for her support.

Most devastating of all is the effect, both economically and emotionally, upon the innocent child. As in *White*, however, the emotional damage has already been done and the economic damage can at least be partially allayed by the $98,108.10 judgment of child support arrearages which will be held in trust for the child's use and benefit. Thus, to the extent that child support has not already been paid by Mr. Richards during the pendency of this litigation, his prayer for relief under Rule 60.02(4) is granted prospectively from and after October 21, 1992 because it is "no longer equitable" to require child support from a man conclusively established not to be the biological father of the child.

Appellant next complains that the trial court erred in not allowing him to amend his petition to assert relief under Rule 60.02(5) because of "extraordinary circumstances and extreme hardship." We see nothing in the record that is extraordinary and no basis for extreme hardship. Therefore, if the court erred in failing to allow the amendment, this error is clearly harmless. In addition, other issues asserted have been considered and are found to be without merit.

Appellee complains that the legitimation order of May 22, 1984 should have res judicata effect as to all future proceedings. Res judicata is not applicable under Rule 60.02(4) in which only prospective features relative to the continuing supervisory powers of the trial court are in issue. In dealing with the federal counter-part of this rule it has been said:

> Similarly, there is no merit in plaintiff's contention that the consensual nature of the Washington judgment somehow precludes relief under Rule 60(b)(5), where otherwise appropriate. Plaintiff contends that the revision of the prospective features of the consent decree impairs the res judicata effect to which such judgments are entitled. It is true that, as a general rule, consent decrees are accorded res judicata effect. *See, e. g., Wallace Clark & Co. v. Acheson Industries*, 532 F.2d 846 (2d Cir. 1976), *cert. denied*, 425 U.S. 976, 96 S.Ct. 2177, 48 L.Ed.2d 800 (1976), and cases cited, 532 F.2d at 848. But the revision of the decree exacted by the district court in this case was consistent with the familiar distinction between the conclusive, res judicata effect properly accorded decrees adjudicating accrued rights and those prospective features of a decree "that involve the supervision of changing conduct or conditions and are thus provisional and tentative." *United States v. Swift & Co., supra,* 286 U.S. at 114, 52 S.Ct. at 462. As the Court observed in *System Federation v. Wright, supra,* 364 U.S. at 647-48, 81 S.Ct. at 371: "A balance must . . . be struck between the policies of *res judicata* and the right of the court to apply modified measures to changed circumstances."

*Safe Flight Instrument Corp. v. United Control Corp.*, 576 F.2d 1340, 1344 (9th Cir. 1978).

The trial judge did not like his decision or his alternatives. Neither do we. An innocent child has been victimized by the selfish conduct of two adults. The action of the trial judge in holding that Mr. Richards is not entitled to relief under Rule 60.02(4) is reversed. He is entitled to prospective relief from all child

support payments from and after October 21, 1992 except for such payments as have been actually made by him during the pendency of his petition for relief. Judgment is rendered against Mr. Richards in the amount of $98,108.10 for child support arrearages from January 1, 1990 through October 21, 1992, this support to be paid into court and held in trust for the use and benefit of Britnee Richards on such terms and conditions as the trial court shall deem proper. In all other respects, including attorney fees assessed by the trial court, the judgment of the Probate Court of Davidson County is affirmed. Costs on appeal are assessed one-half against James Edward Richards, III and one-half against Cynthia Ann Read. The case is remanded to the trial court for further proceedings not inconsistent with this opinion.

_____
WILLIAM B. CAIN, JUDGE

CONCUR:

_____
BEN H. CANTRELL, P.J., M.S.

CONCURS IN SEPARATE OPINION
PATRICIA J. COTTRELL, JUDGE