**Application of JOHNSON.**

**Patent Appeals No. 5595.**

United States Court of Customs and
Patent Appeals.

June 28, 1949.

Woodling & Krost, Cleveland, Ohio
(George V. Woodling and Bruce B. Krost,
Cleveland, Ohio, of counsel), for appellant.

W. W. Cochran, Washington, D. C. (H.
S. Miller, Washington, D. C., of counsel),
for the Commissioner of Patents.

Before GARRETT, Chief Judge, and
JACKSON, O'CONNELL, and JOHN-
SON, Associate Judges.

JOHNSON, Associate Judge.

Appellant's application for a design pat-
ent for an ornamental design for a pair of
pliers (the type known as gas burner and
pipe pliers) was rejected by the examiner
as lacking invention over the references.
The Board of Appeals of the U. S. Patent
Office affirmed that rejection relying on the
following references:

| | | |
|---|---|---|
| Mihan, | 272,573, | Feb. 20, 1883; |
| Smith, | 1,290,846, | Jan. 7, 1919; |
| Seger, | 2,070,217, | Feb. 9, 1937; |

"Utica No. 1300" Gas and Burner Pliers,
page 218, Hammacher Schlemmer Hard-
ware Co., Catalog No. 500.

Appellant's pliers present the fundamen-
tal configuration of a long slim nose formed
by the jaws, and long graceful curving
handles, the ends of the handles turning out
somewhat from the arc of the gripping
portion. A predominating appearance of
smoothness, sleekness, and streamline grace
is secured by the virtual elimination of
plane surfaces through the use of rounded
edges and curved surfaces in their stead.

The Mihan reference is a mechanical
patent covering gas burner and pipe pliers.
The drawing of the patent illustrates pliers
virtually of the same configuration as ap-
pellant's design. Mihan discloses a long
nose formed by the pliers jaws, and long
gracefully curving handles or grippers.
The nose of the Mihan pliers has a rounded
configuration, the side edges of the nose,
however, being beveled at a 45° inclination.

"Utica No. 1300" pliers has an identical
fundamental structure to appellant's design,
the only difference between them being that
"Utica No. 1300" has plane surfaces and
angular corners whereas appellant's design
incorporates curved surfaces and rounded
corners and edges.

The Smith reference is a mechanical
patent for a staple-extracting tool, and dis-
closes handles shaped in somewhat the same
manner as the handles of appellant's de-
sign.

Seger, cited by the examiner but not by the board, though mentioned in the board's decision, is a mechanical patent for a fence repair tool. The drawing illustrates the application of curved rather than plane exterior surfaces to the gripping part (the nose) of the tool.

The board held in effect that the use by appellant of curved surfaces for the edges of the long pliers nose in lieu of angular and plane surfaces as used by Mihan, and the difference in the shape of the handle ends represented departures in design within the scope of knowledge of a routine designer. The board held that the general appearance of the Mihan pliers so closely resembled that of the appellant as to preclude the use of the inventive faculty in forming the latter. The board also considered that Seger taught curving the gripping portion of the pliers, and that Smith disclosed handles of the type embodied in the design at bar. The examiner had held that no patentable ornamental distinction was present in appellant's design over the Mihan and Utica tools.

Appellant contends that Mihan's tool emphasizes flat planes and angles in that "The sides of the jaws, the pivot portion and the handles appear to be disposed in flat parallel planes." While the ends of the Mihan pliers are rounded, the sides comprise plane surfaces, as does the pivot portion; however, the handles appear to have the normal rounded configuration.

Appellant admits that Seger is typical of tools incorporating rounded corners in their design, but denies any similarity in general appearance to his design.

The appellant bases his argument on the alleged new and appealing impression and visual result produced by his design, insisting that comparison with the prior art demonstrates that "marked and decided ingenuity in designing" was involved in producing his design.

■ Courts in considering design patents almost universally apply the rule that it is not enough if a particular design be new, original, and ornamental, but there must be present the exercise of the inventive faculty as well. The courts seem to be of one accord in stating that the fourth element of the formula which tests the patentability of a design, viz., the exercise of the inventive faculty, defies definition and resides as a subjective standard in the mind of the judge considered as an "average observer." Gorham Mfg. Co. v. White, 14 Wall. 511, 81 U.S. 511, 20 L.Ed. 731; Smith v. Whitman Saddle Co., 148 U.S. 674, 13 S.Ct. 768, 37 L.Ed. 606; A. C. Gilbert Co. v. Shemitz, 2 Cir., 45 F.2d 98; In re Mains, 77 F.2d 533, 22 C.C.P.A., Patents, 1299; In re Griffith, 86 F.2d 405, 24 C.C.P.A., Patents, 713; In re Faustmann, 155 F.2d 388, 33 C.C.P.A., Patents, 1065.

■■ While patentable designs may result from regrouping familiar forms and decorations, the substitution of a slightly different form already in use in articles of the class to which the design is applied, does not merit a monopoly. Imperial Glass Co. v. A. H. Heisey & Co., 6 Cir., 294 F. 267. The degree of difference required to establish novelty occurs when the average observer takes the new design for a different, and not a modified already-existing, design. Shoemaker, Patents for Designs, 76.

■ We readily concede that appellant's design, looked at alone, is ornamental and highly pleasing to the eye. When it is compared with the prior art references, however, it is evident that the production of the design did not require the exercise of the inventive faculty. Appellant has merely impressed upon the fundamental configuration of "Utica No. 1300" or Mihan the modification of curved surfaces and rounded corners and edges already in use in articles of the same class to which appellant's design is applied, or obvious expedients to a designer skilled in the art. We agree with the board that invention was not required in the production of the appealed design. Under the precedents of the cases cited herein we conclude that the board's decision should be, and is affirmed.

Affirmed.

By reason of illness, HATFIELD, Judge, was not present at the argument of this case and did not participate in the decision.