**49 CCPA**

**Application of Angelo E. BARTLETT and Elwood J. Fletcher.**

**Patent Appeal No. 6791.**

United States Court of Customs and Patent Appeals.

April 11, 1962.

Edward J. Willey, New York City (Samuel Stearman, New York City, of counsel), for appellants.

Clarence W. Moore, Washington, D. C. (Jere W. Sears, Washington, D. C., of counsel), for Com'r. of Patents.

Before WORLEY, Chief Judge, RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*

RICH, Judge.

This appeal is from the affirmance by the Patent Office Board of Appeals of the rejection of appellants' single claim, which is in prescribed form, for "The ornamental design for a Plastic Foor Tile as shown." Appellants' application is Ser. No. D–46,680, filed June 21, 1957.

The rejection is that the design is unpatentable over a single reference:

"Sweet's Architectural File Catalog for 1954, Section 12i, Catalog Ke, page 5, Item ONYX (423)."

The reference is an illustration of a single square rubber floor tile which is predominantly black, with irregular,

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28 United States Code.

sometimes wavy, randomly distributed streaks, blobs and traces of white of varying degrees of intensity [1] appearing on its surface. The white and gray surface decoration is of the general type sometimes referred to as "marbled." It would not be too far afield to compare it to the intermixture of fat and lean in meat, which is one of the examples given in defining "marbling" by Webster's New Collegiate Dictionary. The inclusions of white in the reference tile appear to have a general orientation parallel to one edge of the tile, which orientation is barely definite enough to be recognizable as such. Furthermore, whatever parallelism with an edge exists, it does not appear to go in either direction and may be described as bidirectional.

The "drawing" of the application at bar, Fig. 1, is a plan view in the form of a photographic reproduction of a square floor tile showing a pattern of figures of mixed white and gray coloration on a black background. The pattern has a random, as distinguished from a regular, design and looks as though one had deposited drops of white and gray pigments on a black base and had then wiped them, in a partly dried condition, all in one direction parallel to one edge of the tile. The result is smeared blobs, the tails of which stream out behind them. Appellants have described them as "comet-like bodies." The effect is distinctly unidirectional, like burning embers falling through darkness if viewed with the comet tails up, not merely one of general parallelism with one edge of the tile.[2]

The Patent Office appears to have derived from this court's opinion in In re Johnson, 175 F.2d 791, 36 CCPA 1175 (1949), relied on by both the board and the solicitor, a point of law or legal test for determining the patentability of designs. Appellants accept the so-called test and both parties have argued the case on the basis of it, reaching diametrically opposite conclusions. The supposed test, quoting from the solicitor's brief which substantially quotes from the board's opinion, is, "that the degree of difference [from the prior art] required to establish a *patentable* distinction occurs when the average observer takes the new design for a different, and not a modified, already-existing design." (Our emphasis.)

A *careful* reading of the Johnson opinion and an inspection of Shoemaker, Patents for Designs, page 76, which it cites, will show that the court was not stating a test for patentability at all, but a test only for *novelty* of the design. In fact what the court said, though not presented as a quotation, is a quotation from Shoemaker's section 46, the first section in his Chapter V, on novelty. He said:

"If the general or ensemble appearance-effect of a design is different from that of others in the eyes of ordinary observers, *novelty* of design is deemed to be present. The degree of difference required to establish *novelty* occurs when the average observer takes the new de-

---

1. A sample of such tile having been produced at the argument, it can be seen therefrom that the white material which is mixed into the black base material to form the surface pattern is sometimes visible on the surface while being slightly submerged below a thin surface layer of black base, somewhat obscuring the white material and giving it a gray cast. Thus the pattern is a mixture of white and gray on black.

2. While the application presents the design in black, white and gray, samples of tiles exhibited by appellants' counsel at the argument show that the design is executed, commercially, in a variety of color combinations as is usual in the tile business. For example, one tile has a light brown base color and the smeared blobs are of white, two darker shades of brown, and olive; another tile has a light gray base color and the smeared blobs are of black, brown, olive, yellow and a color resembling that of tomato juice. Thus the *design*, as a matter of surface ornamentation, which applicant seeks to protect, appears to be independent of specific color and inclusive of dark pattern on light background as well as light pattern on dark background. We so regard it.

sign for a different, and not a modified already-existing, design." [Emphasis ours.]

This court accepted that as sound law in 1949 and we do now. But novelty, as the Johnson opinion was careful to point out, is only one of the prerequisites to patentability and finding compliance with the above test for novelty is not sufficient, in itself, to determine patentability, or the existence of a "patentable distinction."

It is not altogether clear in this case whether the rejection rests on lack of novelty. The examiner said in his answer:

"It is the examiner's position that the instant design is substantially anticipated by the Sweet's item and that no patentable distinction is seen thereover. It is further the examiner's belief that while the exact shape and arrangements of the paint spatter-like bodies may be discernible upon a close and detailed analysis the same is not deemed to provide the present design with any new, distinctive or ornamental appearance such as would warrant the grant of a design patent, the general overall appearance still being that of Sweet's design." [He then cited the Johnson case *novelty* test.]

In affirming, the board, after citing the Johnson case as giving a test for a *patentable* distinction from the prior art and saying that mere novelty of detail is not sufficient to warrant a holding of "patentable unobviousness over the prior art," concluded that "the instant design is but a modification of the prior art." It then held:

"We do not believe that a new and patentably distinct effect has been acheived; * * * we are of the opinion that the over-all effect is not significantly or unobviously different so as to create a patentably different design."

We are left wondering whether, by the Johnson case test, the board held that the instant design is not novel. If it believed that it was not, there was no need for the board to speak of unobviousness or patentable difference. We shall assume, however, because of the uncertainty, that the Patent Office rejection is based on both lack of novelty (by the Johnson case test) and obviousness in view of the reference disclosure and shall deal with both issues.

By the Johnson case test, adopted from Shoemaker, the appellants' design appears to us to be clearly novel. The average observer, in our judgment, would inevitably take appellants' design to be a different design from that shown in Sweet's catalog, rather than a modification of the latter. The two appearances, created by the tile in Sweet's catalog and by applicants' tile respectively, are not only easily distinguished by the practiced eye but they make different overall impressions so that purchasers might very well have preferences for one over the other. In short, they do not look alike and the existence of statutory novelty is beyond question.

But there remains the issue of unobviousness of appellants' design in view of the reference. Its solution, as has always been recognized, is not easy and as the solicitor realistically concludes in his brief, "the determination of patentability in design cases must finally rest on the subjective conclusion of each judge." Whether the design is unobvious is a question not unrelated to novelty, however, and the differences in degree and in kind which one can observe are the only criteria of decision available to us. As stated above, we see no overall similarity, as did the board. Appellants have produced a distinctly new and different impression. They did not do so by modifying what is shown in the reference but by adopting a new approach. We cannot better describe it than to say that instead of using a marbleizing technique which produces a bidirectional pattern they adopted a blob-smearing technique which produces a distinctive and strongly unidirectional pattern. Judging, as we must, from the basis that the single reference depicts

the most relevant prior art, what we see is that appellants' design was obviously the result of creative rather than imitative efforts, origination rather than close copying. The difference in kind between the designs is, in our opinion, such as to eliminate the possibility that the prior art contains a suggestion of the design sought to be patented. We are unable, therefore, to conclude that it was obvious.

The decision of the board is reversed.

Reversed.

WORLEY, Chief Judge, dissenting.

I am in complete agreement with the examiner and board that there is nothing here of a patentable nature. Indeed, it is as devoid of patentability as the subject matter of In re Balmer, 276 F.2d 405, 47 CCPA 883. My reasons there are equally applicable here.

To give appellant a monopoly will effectively prevent others in this field from exercising even the simplest kind of ordinary skill.