Donald W. NORWOOD, an individual, Plaintiff-Appellant,

v.

EHRENREICH PHOTO–OPTICAL INDUSTRIES, INC., a corporation, and Ehrenreich Photo-Optical Industries West, Inc., a corporation, Defendants-Appellees.

No. 71-1835.

United States Court of Appeals, Ninth Circuit.

Dec. 3, 1975.

4

D. Bruce Prout (argued), of Christie, Parker & Hale, Pasadena, Cal., for plaintiff-appellant.

Joseph M. Fitzpatrick (argued), of Fitzpatrick, Cella, Harper & Scinto, New York City, for defendants-appellees.

## OPINION

Before KOELSCH, KILKENNY and WALLACE, Circuit Judges.

KOELSCH, Circuit Judge:

The matter is here on the appeal of Donald W. Norwood, plaintiff below, from a judgment holding claims 1 through 4, 6, 7 and 9 of his U.S. Patent No. 3,304,435 (the "435" patent) invalid and not infringed by defendants' accused device. 322 F.Supp. 898 (C.D.Cal.1970). We conclude that the trial court's decision was correct on both grounds.

The "435" patent was granted plaintiff on February 14, 1967, pursuant to an application filed July 18, 1963. It covers a "photometric device having greater response to a preferential central portion of a scene." In common parlance, the device is a meter (for use principally in photography) employing a photoelectric cell to measure the intensity of light reflected from objects; its particular feature is its fabrication to "indicate an intermediate value between the average brightness of the preferential central smaller portion of [a] scene and the average brightness of the remaining larger portion of [that] scene." "435" patent, claim 9, col. 10, lines 16–20.

Emphasis on the central portion of the scene, which normally contains the object or objects of interest to the photographer, is achieved by interposing a filter having an aperture at its center between the photoelectric cell and the viewing lens [see FIGURE IA]

| | |
|---|---|
| 13 | lens |
| 13a | main axis |
| 15 | photoelectric cell |
| 19 | plate |
| 20 | central circular aperture |
| 21 | thin opaque masking disc |
| 22 | aperture |
| 23 | filter |

| | |
|---|---|
| 25 | central circular aperture smaller than aperture 20 |
| 26 | "ON-OFF" switch |
| 28 | battery |
| 34 | permanent magnet |
| 35 | moving coil |
| 36 | pointer [to indicate integrated "reading"] |

FIGURE IA

(or, more simply, by integrating the filter/aperture and the photoelectric cell so that the light-sensitive surface of the latter is non-uniformly light-receptive [see FIGURE IB]).

44 Central circular area

45 VARIATIONAL TYPE OF PHOTOELECTRIC CELL

43 Rectangular area of reduced sensitivity

42 Outer area of further reduced or no sensitivity

46 VARIATIONAL TYPE OF FILTER ELEMENT, the surface of which is decreasingly sensitive from its center outward

FIGURE IB

———————

The size of the aperture at the center of the filter (or the central surface area of the photoelectric cell which is more light receptive than the peripheral surface area of that photocell) is fabricated to correspond to the ratio which the object of interest in a scene generally bears to the whole. By reason of the differing intensities of light passing through the filter and aperture (or reaching the de-sensitized periphery and more responsive central portion of the surface of the pho-tocell), the "reading" of the light re-flected from the scene is weighted to-ward the intensity of light reflected from the object of interest.

**6**

Defendants are sales representatives for the American corporation which imports the Nikon F Photomic, the Nikon Photomic FTN, and the Nikkormat FTN cameras from their Japanese manufacturer. The accused device contained in these cameras sold in the United States by defendants is a light metering system structurally different from the devices described in the "435" patent. In the accused system, light from the scene sought to be photographed passes through a taking lens, strikes a mirror (which retracts during an exposure to permit the light to reach the film), and forms an image of the scene at a focusing screen. Light from the focusing screen image is thereafter transmitted through a pentaprism and eyepiece lens to the eye of the photographer using the camera. Such light is simultaneously transmitted through the pentaprism to two aspherical lenses, each of which forms an image at a field stop (a diaphragm or masking device) positioned between that aspherical lens and one of two corresponding small photoelectric cells. As found by the district court, a "center-weighted response is obtained by positioning the aspherical lenses, field stops, and photocells so that they receive light from portions of the focusing screen image which partially overlap at its center." Hence the integrated "reading" of the two "cross-eyed" photocells emphasizes the intensity of light at the center of the focusing screen image. *See* FIGURE II.

Donald W. Norwood vs.

ELECTRICAL CONNECTIONS
PHOTOCELLS
FIELD STOPS OR DIAPHRAGMS
LENSES FOR PHOTOCELL
EYEPIECE

SHUTTER IN FRONT OF FILM NOT SHOWN

PENTAPRISM

FOCUSING SCREEN (TYPE A SHOWN— SEVERAL TYPES AVAILABLE)

MIRROR (RAISES WHEN PICTURE IS SNAPPED)

FILM

TAKING LENS

SCENE BEING PHOTOGRAPHED

FIGURE II

We fully agree with the district court's determination that claims 1–4, 6, 7 and 9 of the "435" patent[1] are invalid for obviousness.[2] In the leading case of *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), the Supreme Court indicated that the issue of "obviousness" should be resolved by the district court's conducting factual inquiries respecting (1) the scope and content of the prior art, (2) the differences between the prior art and the disputed claim or claims, and (3) the level of ordinary skill in the pertinent art. 383 U.S. at 17, 86 S.Ct. 684. *See also Anderson's-Black Rock, Inc. v. Pavement Salvage Co.*, 396 U.S. 57, 62, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969); *Alcor Aviation, Inc.* v. *Radair Incorporated*, 527 F.2d 113, 115 (9th Cir. 1975).

Here the district court's opinion, *see* 322 F.Supp. at 902–903, and its extensive findings of fact manifest its consideration of these factors.[3] The court correctly found that plaintiff's broad construction of his claims so as "to make them read upon the optical systems of defendants' accused devices" causes them "to the same extent [to] read upon the prior art Elwood Densitometer and Light Meter . . . [and] the prior art Nelson patent No. 3,060,823." Moreover, the court properly determined that other prior art patents, including the Rath patent No. 2,444,674, the Stimson

1. Claims 2 and 7 of the "435" patent are representative of the several claims at issue.

Claim 2 provides:

"2. A photometric device comprising a single lens structure for forming a single image of a scene, a single means responsive to the light of said image and operable to vary an electrical signal in accordance with the brightness thereof, said light responsive means including means for introducing a difference in response between different portions of said image so that each lumen coming from a preferential central portion of the scene and forming a corresponding preferential central portion of said image will cause a greater electrical output signal than each lumen coming from the remaining portion of the scene and being in a remaining portion of said same image produced by said same lens structure, and an electrically actuated unit operable by said light responsive means in response to light in each of said portions of said image and to a greater extent by each lumen from said preferential central portion of the scene than by each lumen from said remaining portion thereof."

Claim 7 provides:

"7. A photometric device comprising a single means for forming a single image of a scene, a single means responsive to the light of said image and operable to vary an electrical signal in accordance with the brightness thereof, said light responsive means including differential filter means for introducing a difference in response between different portions of said image so that each lumen coming from a preferential central smaller portion of the scene and forming a corresponding preferential central smaller portion of said image will cause a greater electrical output signal than each lumen coming from the remaining larger portion of the scene and being part of a remaining larger portion of said same image produced by said same image forming means, and an electrically actuated unit operable by said light responsive means in response to light in each of said portions of said image and to a greater extent by each lumen from said preferential central smaller portion of the scene than by each lumen from said remaining larger portion thereof, said difference in response being of such value that the average brightness of the preferential central smaller portion of the image will have at least as much influence in determining the magnitude of the electrical output signal as will the average brightness of the remaining larger portion of the image."

2. 35 U.S.C. § 103 provides in part:

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."

3. While *John Deere Co.* indicated that "secondary considerations" such as commercial success, long felt but unsolved needs, and failure of others might serve as helpful indicia of obviousness, *see* 383 U.S. at 17–18, 86 S.Ct. 684, those considerations have little application to the case before us. The "435" patent is a "paper patent," having been produced only by prototype, and the prior art urged by defendants at trial makes clear that earlier devices embodying different constructions achieved a similar "centerweighting" result as does the device of the "435" patent.

patent No. 3,232,192, and plaintiff Norwood's own earlier patent No. 3,121,170 (the "170" patent), all of which in some fashion employ the concept of "centerweighting" or "differential response," demonstrate that the concept was well known in the art relating to light meters long before plaintiff's purported invention of the subject matter of the "435" patent. Finally, the court correctly concluded that the device of the "435" patent is merely a structural improvement over the device of plaintiff's earlier "170" patent.

In this connection, we note that the statutory presumption of nonobviousness,[4] here heavily relied on by plaintiff, is substantially dissipated where there is a showing that the patent examiner failed to consider the prior art. *See Alcor Aviation, supra,* 527 F.2d at 15; *Hewlett-Packard Company v. Tel-Design, Inc.,* 460 F.2d 625, 628 (9th Cir. 1972). And here the record is clear that the patent examiner, in awarding plaintiff his "435" patent, neither cited nor considered the prior art devices of Elwood, Nelson, Rath, Lange and Stimson.

In sum, we can only conclude that the district court's determination—that the subject matter of plaintiff's "435" claims would, at the time his asserted "invention" was made, have been obvious to a person having ordinary skill in the pertinent art—was wholly correct.

We similarly agree with the district court's determination that none of the disputed "435" claims are infringed by defendants' accused devices. Plaintiff's essential position on infringement, taken at trial and maintained here, is that defendants' focusing screens, some of which have "optical apertures" at their centers,[5] permit the formation of a focusing screen image with a greater intensity of light at the "optical aperture" and hence create a "centerweighted" effect in the same manner as plaintiff's "435" devices. The district court correctly rejected this contention, and so do we. Defendants, who style the "optical aperture" at the center of some of their focusing screens a mere visual aid in focusing, presented substantial expert testimony that there is no significant difference between the light transmissivity of the accused A-type focusing screen and the non-accused (because it has no aperture) D-type focusing screen. Defendants' expert further testified that substantially identical photographic results were obtained by the accused cameras under identical photographic conditions using, alternatively, the accused A-type screen, the non-accused D-type screen, and no screen at all.

In addition, the district court correctly relied on the doctrine of file wrapper estoppel in rejecting plaintiff's contention that the accused optical system infringes any of his "435" claims. When the patent examiner rejected a number of plaintiff's original "435" claims on the ground of double patenting because those claims could be read to include "the plural photocell arrangement" described in plaintiff's earlier "170" patent, plaintiff cancelled certain claims and amended all of the remaining "435" claims in the application so as to limit those claims to a device which entails "a single lens structure" (claim 2) or "a single means" (claim 7) "for forming a single image of a scene" and to "a single means responsive to the light of [the] image and operable to vary an electrical signal in accordance with [its] brightness." The accused system, however, comprises three lens structures and two photocells. It is well settled that a claim in a patent must be interpreted

4. 35 U.S.C. § 282 provides in part:

   "A patent shall be presumed valid. The burden of establishing invalidity of a patent shall rest on a party asserting it."

5. The accused focusing screens which have "optical apertures" at their centers—defendants' so-called A-type, F-type, and J-type screens—are actually only three of more than a dozen types of focusing screen designed to fit, and for use in, the accused cameras.

**10**

with reference to claims which have been rejected, and allowed claims cannot be read to cover that which has been eliminated from the patent by the inventor's own limiting amendments. *See Exhibit Supply Co. v. Ace Patents Corporation,* 315 U.S. 126, 136–137, 62 S.Ct. 513, 86 L.Ed. 736 (1942); *Oregon Saw Chain Corporation v. McCulloch Motors Corporation,* 323 F.2d 758, 768–769 (9th Cir. 1963), *cert. denied,* 377 U.S. 915, 84 S.Ct. 1180, 12 L.Ed.2d 186 (1964). Hence plaintiff is estopped from urging a sufficiently broad construction of his claims to cover defendants' accused devices.

On the record before us, we are unable to say that the district court's findings of non-infringement are clearly erroneous.

Affirmed.