SIDEWINDER MARINE, INC.,
Plaintiff-Appellant,

v.

STARBUCK KUSTOM BOATS AND
PRODUCTS, INC.,
Defendant-Appellee.

No. 76–2006.

United States Court of Appeals,
Tenth Circuit.

Argued March 13, 1978.

Decided April 9, 1979.

George C. Limbach, San Francisco, Cal. (Philip M. Shaw, Jr., of Limbach, Limbach & Sutton, San Francisco, Cal., and Richard L. Schrepferman and Stephen E. Snyder of Holme, Roberts & Owen, Denver, Colo., on the brief), for plaintiff-appellant.[*]

Before SETH, Chief Judge, and HOLLOWAY and McKAY, Circuit Judges.

HOLLOWAY, Circuit Judge.

This is a patent infringement action in which the question of infringement has been mooted by a holding in the trial court that the subject patent was invalid and therefore incapable of being infringed. The court's opinion is reported at 418 F.Supp. 224 (D.Col.). Plaintiff Sidewinder Marine, Inc. ("Sidewinder"), seeks reversal of the holding of invalidity and remand for trial on the issue of infringement.

The center of the controversy is Sidewinder's U.S. Design Patent No. 219,118, covering the "ornamental design for a boat, as shown" in Appendix A. Although we believe that, in the design patent area, a picture is truly worth a thousand words, the cases in this area often attempt to capture the essence of their respective designs with a string of words. Since much of the evidence below was in the form of words rather than pictures, we too find it expedient to make such an attempt with the boat design before us—keeping in mind that the patent drawings themselves are contained in Appendix A. Plaintiff's brief (p. 5) thus describes the Sidewinder patent:

Significant features of the patented design include a sharply pointed bow, a wide inclined peripheral deck portion, a slight raising forward deck portion extending from the bow past the windshield with the deck at each side of the windshield extending rearwardly in an upwardly curved narrowing surface terminating in a raised coaming (or gunwale) extending rearwardly and downwardly toward the aft end of the boat, and a low profile, swept back, continuously arcuate, circular wraparound windshield on the deck forward of the dashboard with the top element of the windshield extending rearward at each side of the boat to merge smoothly with the raised coaming.

The patent was issued on November 3, 1970, for a term of fourteen years to Ken R. Baker and Ronald Plecia. Baker was then president of Sidewinder, a boat sales company incorporated in California; Plecia was an industrial designer who had worked with Baker for some time in the development of racing and sport boats. At the time they applied for the patent, on October 17, 1969, both men had assigned their entire interest in the patent application to Sidewinder, which thereby gained the right to license the manufacture of the patented design and to sue for its infringement.[1]

The evidence shows that the design grew from a concept—the desire to merge the high-performance speed boat technology already produced by Sidewinder with certain

---

[*] The Defendant-Appellee did not enter an appearance or brief or argue the case on appeal.

1. Although defendant at trial seriously questioned the jurisdiction of the district court on the basis of the "complexity and confusion surrounding the chain of title in the subject patent," resulting from Sidewinder's bankruptcy in the early 1970s, the district court concluded that it did in fact have jurisdiction because of certain orders entered in the separate bankruptcy proceeding. 418 F.Supp. at 227. Defendant does not raise this jurisdictional point in the appeal, and we are in any case satisfied with the district court's resolution of the question. See Pl.Ex. 81.

safety aspects of family pleasure boats (I R. 47–49)—through a drafting stage—when "various suggested sketches and ideas were put forth, [and] gradually [were] drawn together in a comprehensive whole" (*id.* 50)—to the final product.[2] It was estimated at trial that this design process lasted from January until September of 1969. (*Id.* 61). In September, the design was introduced at the Chicago Boat Show in the form of a prototype for Sidewinder's new "Super Sidewinder" speed boat.

The Super Sidewinder met with immediate acclaim at the Chicago show, and indeed proved to be a far greater success there than had been anticipated. In the aftermath of the show, 80% of the company's sales were for the new model, as opposed to the 20% that had been projected. (*Id.* 52). At the show, however, Ken Baker was approached by Robert R. Hammond, president of Glastron Boat Company of Austin, Texas, and was told of the strong similarity between the Super Sidewinder and a boat which Glastron had been developing for several months. Hammond sent Baker a letter several days later reminding him of their conversation, enclosing four photographs of a full-sized mock-up of the boat which he had mentioned, and closing with the words: "Now don't go say we've been copying!" (Def.Ex. N).

The Super Sidewinder continued to be a critical success in the months following its Chicago debut. It was called "[p]robably the most futuristic, boat in the entire New York boat show," and a "big attraction to the younger set" there as well (Pl.Ex. 20). In Atlanta, the new boat was noted as being "several years ahead of the market in design." (Pl.Ex. 21). The speed boat was featured in 1970–72 by various trade magazines which stressed its attractive styling (Pl.Ex. 24–26, 76–77), and it was used by the Mercury Division of Brunswick Corpo-

ration as a "model" for its outboard motor brochures in 1970–71. (Pl.Ex. 22–23). In addition, the Super Sidewinder was included by the United States Information Agency in a travelling exhibit featuring "what [the Agency] felt to be . . . typical of the best of American product design in a number of categories"; the boat was assertedly "one of the focal points" in the tour which lasted three years and encompassed sixty-one countries. (I R. 63).

During this same time period, the Super Sidewinder was also a commercial success. Frederick Ide, the present president of Sidewinder, testified that the new-model speed boat took over a large share of the company's total sales after its introduction "and from that aspect simply replaced the older lines that we had." (*Id.* 71). Moreover, the public bought more of the Super Sidewinders than it had of the older models which they replaced, even though the dealer price for the new model was "considerably higher in all cases than the boats that they replace[d]." (*Id.*).

Sidewinder's troubles with copying of its popular new boat by competitors began shortly after its unveiling in September 1969. A few days after the Chicago Boat Show, Richard Schuster of Schuster Boats, Inc., purchased the 16-foot Super Sidewinder prototype displayed at that show and made a "splash" (direct) copy of it for his "Tahiti" line of boats. (*Id.* 92). Other manufacturers followed Schuster's lead and either marketed splash copies of their own or brought out slightly modified versions of the Sidewinder design. Altogether there were five or six copies put out in the first year, with an eventual total of at least eighteen.[3] (*Id.* 53). Testimony at trial lends some support to the allegation that the defendant in this action, Starbuck Kustom Boats and Products, Inc. ("Starbuck"), engaged in direct or indirect copying of the

**2.** Perhaps the greatest difficulty plaintiff experienced in the actual production of its design was finding a "continuously arcuate" windshield (*i. e.*, one describing a complete semi-circle) to meet its specifications. Sidewinder designers finally had to make their own molds for the windshield and send them to Middy Marine

Products, Inc., for manufacture, since no such windshield was then being marketed.

**3.** Copies have also allegedly been produced in Canada, Australia, New Zealand, England, and perhaps Japan. (I R. 99).

Sidewinder design for its own 16′ and 17′8″ boats. (IV R. 9–14 passim).

Because of this sudden, extensive copying activity, Sidewinder—which had filed for patent protection through Baker and Plecia only *after* the Chicago show—sought to expedite consideration of its application in the Patent Office by means of a "petition to make special." The company thus took on the burden of submitting a copy of all references "deemed most clearly related to the subject matter" of the claim. *Manual of Patent Examining Procedure*, § 708.02 (VII)(d) (3d ed. 1961). As noted, the subject patent was granted under this procedure on November 3, 1970. The six references cited by the Patent Examiner bore no close resemblance to plaintiff's design, and only a boat called the Nova "somewhat resembled" the Super Sidewinder in side-view, as pointed out by the court below. 418 F.Supp. at 226.

Once the patent had issued, Sidewinder proceeded to sue or negotiate to settlement with a number of alleged infringers. Most of the settlements involved signing a license agreement allowing the copier to continue marketing the patented design, with payment of royalties to Sidewinder. Sidewinder's notable courtroom success was against Robert Burns and his Cheetah Boat Mfg. Co. The District Court for the Central District of California there upheld the validity of the Super Sidewinder patent, found it to be infringed, and awarded damages to the patent-holder. *Sidewinder Marine, Inc. v. Burns*, 176 U.S.P.Q. 499. By contrast, the District Court for the District of Colorado here held the patent to be invalid, primarily on the ground that the subject design was obvious in light of the prior art at the time of its creation. See 35 U.S.C. § 103.[4]

It is helpful first to outline the findings and conclusions of the trial court which led to its determination that the patent was invalid.

---

4. The district court also held that the design was not "original" and therefore failed to meet one of the requirements for a design patent contained in 35 U.S.C. § 171. 418 F.Supp. at

## I

### *The findings and conclusions of the trial court*

After detailing the general background of the controversy, the trial court stated its findings and conclusions as follows. It was found that there is a significant unity of design in automobiles and pleasure boats and that the wraparound windshield was used in automobile design long before the subject patent application. The drawings in Sidewinder's patent application did not contain dotted lines and the design patent must therefore be considered for the overall appearance of the entire boat, the combined appearance of the assertedly new deck with the old deep V hull, acknowledged to have been in the public domain before 1969. The claim itself was for "the ornamental design for a boat, as shown," making no separate reference to the deck or hull.

The court found and concluded that the line drawings claimed to constitute an overall boat design subject to patent protection failed to meet the constitutional requirement of invention reflected in the nonobviousness condition for patentability of 35 U.S.C. § 103. The court pointed out that 35 U.S.C. § 171 applies all the requirements of Title 35 for patentability to design patents, absent explicit exception therefrom. There is no statutory exception from the § 103 nonobviousness requirement for design patents, and the court concentrated heavily on the 1952 amendment to the Patent Act, which codified previous case law embodying the constitutional standard of invention.

The trial court further noted the division among the circuits on the application of the nonobviousness test in the area of design patents. 418 F.Supp. at 228. The Ninth Circuit in *Schwinn Bicycle Co. v. Goodyear Tire & Rubber Co.*, 444 F.2d 295, 9 Cir., adopted the view of the Court of Customs and Patent Appeals in *In re Laverne*, 356

---

231. Because of our disposition on obviousness grounds, we need not consider the holding on originality.

F.2d 1003, 1006, 53 C.C.P.A. 1158, that under § 103 it is only necessary "to determine obviousness to the ordinary intelligent man." The Second, Third and District of Columbia Circuits disagree and require that nonobviousness be measured from the perspective of a designer having ordinary skill in the art. *Id.* at 228, and cases cited. The trial court agreed with the latter position.

The court found that the Sidewinder design failed to meet the nonobviousness requirement of § 103 under both the "ordinary intelligent man" and the "ordinary designer" standards, pointing to several prior art references to support both findings. With respect to the finding under the "ordinary intelligent man" standard, the trial court cited specific examples of prior art in boat design. However, with respect to the "ordinary designer" standard of nonobviousness, the court further pointed to specific automobile designs which should be considered under the stricter standard.

After reviewing the prior art references the court found that the Sidewinder design failed to meet the nonobviousness condition of § 103 because, whichever standard were applied, the differences between the Sidewinder and prior art are such that the design as a whole would have been obvious within the meaning of that section. 418 F.Supp. at 230–31.

In addition, the court found the requirement under 35 U.S.C. § 171 that a design be "original" was not satisfied since many of the prior references were so substantially similar to the Sidewinder design that it lacked the requisite originality. The court found, however, that the Sidewinder design met the patentability requirement of novelty contained in § 102.

Concluding that the Sidewinder design does not satisfy the requirements of nonobviousness in § 103 and of originality in § 171, the patent was declared invalid.

Plaintiff-Appellant Sidewinder argues strenuously that the trial court committed error in that (1) it failed to give the patent in suit the proper presumption of validity in light of the prior art considered by the Patent Office and of the determination of validity by the District Court in California in *Sidewinder Marine, Inc. v. Burns, supra* ; (2) it measured obviousness of the design from the perspective of a designer of ordinary skill rather than from the viewpoint of the ordinary intelligent person; (3) it failed to make proper findings on the scope and content of the prior art, the differences between the prior art and the patent in suit, and the level of ordinary skill in the art; and (4) its findings that the design was obvious and unoriginal were clearly erroneous.

II

*The presumption of validity and the determination of validity in the Burns case*

Plaintiff Sidewinder initially argues that the trial court failed to give its design patent the proper presumption of validity and that defendant Starbuck failed in its attempt to overcome that presumption. Plaintiff cites 35 U.S.C. § 282 which provides that a patent once issued "shall be presumed valid," and that "[t]he burden of establishing invalidity . . . shall rest on the party asserting such invalidity."

■ It is true that the burden on an alleged infringer to rebut the presumption of validity is heavy. The defendant must introduce "clear and convincing" evidence in this regard, *e. g., Moore v. Shultz*, 491 F.2d 294, 298 (10th Cir.), and "every reasonable doubt should be resolved against him," *Mumm v. Jacob E. Decker & Sons*, 301 U.S. 168, 171, 57 S.Ct. 675, 676, 81 L.Ed. 983. *See* also *Radio Corp. of America v. Radio Engineering Laboratories, Inc.*, 293 U.S. 1, 7–8, 55 S.Ct. 928, 79 L.Ed. 163; *Eimco Corp. v. Peterson Filters and Engineering Co.*, 406 F.2d 431, 434 (10th Cir.), *cert. denied*, 395 U.S. 963, 89 S.Ct. 2105, 23 L.Ed.2d 749; *King-Seely Thermos Co. v. Refrigerated Dispensers, Inc.*, 354 F.2d 533 (10th Cir.). The rationale for this strong presumption is the expertise of the Patent Office in determining when the conditions for patentability have been satisfied. *Neff Instrument Corp. v. Cohu Electronics, Inc.*, 298 F.2d 82, 86 (9th Cir.). *See Mumm, supra.*

■ Nevertheless, the presumption flowing from issuance is rebuttable. When it is shown that a patent has issued "without consideration of prior art not submitted to the Patent Office, the basis for the presumption vanishes, and the presumption is significantly weakened." *Johns-Manville Corp. v. Cement Asbestos Products Co.*, 428 F.2d 1381, 1382 (5th Cir.). *See also Norwood v. Ehrenreich Photo-Optical Industries, Inc.*, 529 F.2d 3, 9 (9th Cir.); *Hadco Products, Inc. v. Walter Kidde & Co.*, 462 F.2d 1265, 1272 n. 33 (3d Cir.), cert. denied, 409 U.S. 1023, 93 S.Ct. 464, 34 L.Ed.2d 315; *Deep Welding, Inc. v. Sciaky Bros., Inc.*, 417 F.2d 1227, 1234 (7th Cir.), cert. denied, 397 U.S. 1037, 90 S.Ct. 1354, 25 L.Ed.2d 648. When the Patent Office has failed to take into account prior art which would be relevant to a patentability determination, it cannot be said that that agency has fully brought its expertise to bear on the task at hand, and the statutory presumption is diminished or dissipated altogether. *See Deep Welding, supra; Lorenz v. F. W. Woolworth Co.*, 305 F.2d 102, 105 and nn. 6–7 (2d Cir.).

■ Plaintiff seeks to avoid the effect of this exception to the presumption by urging that the Nova boat cited by the Patent Examiner is "more pertinent" than any new reference adduced by defendant at trial. *See CMI Corp. v. Metropolitan Enterprises, Inc.*, 534 F.2d 874, 880 (10th Cir.); *Moore v. Shultz, supra*, 491 F.2d at 299. It is true that the Nova in side-view bears some resemblance to the subject design. (See Plaintiff's Ex. 28). As noted above, however, the Patent Examiner cited only six prior art references, and he did not cite automobile designs which could properly be viewed as analogous to the boat design before him. Defendant, on the other hand, introduced these automobile designs (as well as boat designs not previously cited) at

trial. We feel that the Nova is not more pertinent to the subject matter of the Sidewinder patent than the new references developed by defendant Starbuck, especially given the considerable similarity between one of those references and plaintiff's design.[5] The statutory presumption of validity is therefore substantially weakened. *Cf. Lorenz v. F. W. Woolworth Co., supra*, 305 F.2d at 105 n. 7.[6]

Plaintiff also points to the previous adjudication of validity in *Sidewinder Marine, Inc. v. Burns, supra*, as strong evidence of validity in this case. There is, of course, no question here concerning *res judicata* or collateral estoppel on the validity issue, since defendant Starbuck was not a party to the *Burns* case. *See Boutell v. Volk*, 449 F.2d 673, 677–78 (10th Cir.). Rather, plaintiff relies on the outcome of the California litigation for supposedly strong, if nonbinding, precedential effect. *See Radio Corp. of America v. Radio Engineering Laboratories, Inc., supra*, 293 U.S. at 8, 55 S.Ct. 928 hereto.

It is variously stated that a prior adjudication of patent validity is entitled to "comity," *Columbia Broadcasting System, Inc. v. Zenith Radio Corp.*, 391 F.Supp. 780, 785 (N.D.Ill.), aff'd 537 F.2d 896 (7th Cir.), "great weight," *Barr Rubber Products Co. v. Sun Rubber Co.*, 425 F.2d 1114, 1120 (2d Cir.), cert. denied, 400 U.S. 878, 91 S.Ct. 118, 27 L.Ed.2d 115, and "respectful consideration," *Safe Flight Instrument Corp. v. McDonnell-Douglas Corp.*, 482 F.2d 1086, 1090 (9th Cir.), cert. denied, 414 U.S. 1113, 94 S.Ct. 843, 38 L.Ed.2d 740. The cases also speak in terms of a "high presumption of validity" created by a prior adjudication favorable to the patentee. *See, e. g., General Tire & Rubber Co. v. Firestone Tire & Rubber Co.*, 489 F.2d 1105, 1116 (6th Cir.), cert. denied, 417 U.S. 932, 94 S.Ct. 2643, 41 L.Ed.2d 235.[7]

---

5. See Cycolac Research Vehicle, Defendant's Exhibit Q3 and S3, Appendix B–1 and B–2.

6. Overcoming the presumption in accordance with the cited cases does not as such invalidate the patent. Rather, once any highly relevant but unconsidered prior art is introduced, a

fresh assessment of all the art—new and old— must be carried out without benefit to the patentee of the presumption.

7. There is especially strong language along this line in *Cold Metal Process Co. v. Republic Street Corp.*, 233 F.2d 828, 837 (6th Cir.), cert.

Still, such a prior adjudication of validity "does not, absent estoppel running against the parties to the prior litigations, supplant the primary duty of a court to dispose of cases according to the law and the facts of the particular case before it," *Safe Flight Instrument Corp. v. McDonnell-Douglas Corp.*, supra, 482 F.2d at 1090. In a case like this, where relevant prior art was not before the court rendering the earlier adjudication of validity, that decision has little precedential value. See *Phillips Electronic and Pharmaceutical Industries Corp. v. Thermal and Electronics Industries, Inc.*, 450 F.2d 1164, 1176 (3d Cir.); *Deep Welding, Inc. v. Sciaky Bros., Inc.*, supra, 417 F.2d at 1234. Although the court in the *Burns* case had before it some automobile designs, it is apparent that that court did not consider at least two important prior art automobiles—the DuPont amphibious car and the Cycolac demonstration vehicle—which were presented by the defendant in this case. (Appellant's Opening Brief, 17; see Defendant's Exhibits I3 and Q3). And as developed further below, the Cycolac vehicle is particularly pertinent to the subject design. (See note 11, *infra*).

For these reasons we conclude that the presumption of validity and the force of the *Burns* decision are considerably weakened. We do not agree that the trial judge here erred in the consideration he gave to these factors in arriving at his decision.

### III

#### *The standard for obviousness*

Plaintiff Sidewinder next contends that the trial court erred in assessing the obviousness issue according to how an "ordinary designer" would view it rather than from the perspective of the "ordinary intelligent man." The importance of this distinction to plaintiff is that under the "ordinary designer" standard, the trial court found that previously-existing automobile designs may properly be taken into account as developments in an analogous field which a boat designer could reasonably be expected to be aware of, and we accept that finding. Under the "ordinary intelligent man" standard, the trial court felt that only prior boat designs would be relevant. See 418 F.Supp. at 229–30. While the trial court applied both tests and found the Sidewinder design obvious even under the "ordinary intelligent man" standard preferred by plaintiff,[8] we have considerable doubt as to the result under that standard alone. Since the result might be different under the two standards, we feel that we should determine which standard applies and then proceed on that basis.

Title 35 U.S.C. § 103, provides in part: A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 [concerning "novelty"], if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been *obvious* at the time the invention was made *to a person having ordinary skill in the art to which said subject matter pertains.* [emphasis added]

As written, and as interpreted in cases dealing with utility patents, the statutory non-obviousness requirement focuses not on some hypothetical "ordinary" person, or layman, but on one "reasonably skilled" in the

denied, 352 U.S. 891, 77 S.Ct. 128, 1 L.Ed.2d 86: "The prior decisions holding these patents valid should be followed unless the court is convinced of 'a very palpable error in law or fact.'" The *Cold Metal* court was quoting from *Penfield v. C. & A. Potts & Co.*, 126 F. 475, 478 (6th Cir.), and study of that case reveals that the Sixth Circuit, in originating the "very palpable error" language, was concerned with the principle of *stare decisis, i. e.*, where the same court had previously upheld the patent in question. See *Pachmayr Gun Works, Inc. v. Olin Mathieson Chemical Corp.*, 502

F.2d 802, 805 (9th Cir.). This Circuit has not before been faced with the Sidewinder patent, and so the *Cold Metal-Penfield* language is not apposite here.

8. The trial judge stated that he believed that the "ordinary designer" test is the better approach, but that since neither the Supreme Court nor this court has ruled upon which test should be applied, he had analyzed the prior art references under both standards of non-obviousness. 418 F.Supp. at 229.

applicable art. *Dann v. Johnston*, 425 U.S. 219, 229, 96 S.Ct. 1393, 47 L.Ed.2d 692. There is disagreement among the Circuits, however, when the non-obviousness requirement is carried over—as it must be according to 35 U.S.C. § 171—into the design patent area. As noted, the Ninth Circuit in *Schwinn Bicycle Co. v. Goodyear Tire & Rubber Co.*, supra, 444 F.2d at 299, applied the level of knowledge of an "ordinary intelligent man" as the standard by which obviousness or non-obviousness of a design should be determined, following the lead of the Court of Customs and Patent Appeals, which had said concerning obviousness in *In re Laverne*, 356 F.2d 1003, 1006, 53 C.C.P.A. 1158:

> The test is inherently a visual test, for the design is nothing more than appearance, and the appearance is that of the article as a whole. . . . *No special skill is required* to determine what things look like, though individuals react differently. It is bound to be an individual reaction. (Emphasis added).

*See also In re Johnson*, 175 F.2d 791, 792, 36 C.C.P.A. 1175.

On the other hand, the Second, Third, Sixth, Eighth, and District of Columbia Circuits have phrased their standard for design obviousness in terms of the "worker of ordinary skill in the art" or the "ordinary designer," though those courts recognize that novelty and ornamentality—distinct requirements of design patentability contained in 35 U.S.C. § 171—are to be as-sessed from the viewpoint of the "ordinary observer." *See Clark Equipment Co. v. Keller*, 570 F.2d 778, 799 (8th Cir.), cert. denied, —— U.S. ——, 99 S.Ct. 96, 58 L.Ed.2d 118; *Schnadig Corp. v. Gaines Manufacturing Co.*, 494 F.2d 383, 389 (6th Cir.); *Fields v. Schuyler*, 153 U.S.App.D.C. 229, 472 F.2d 1304, 1306, cert. denied, 411 U.S. 987, 93 S.Ct. 2270, 36 L.Ed.2d 965; *Hadco Products, Inc. v. Walter Kidde & Co.*, 462 F.2d 1265, 1272 (3d Cir.); *G. B. Lewis Co. v. Gould Products, Inc.*, 436 F.2d 1176, 1178 (2d Cir.). *See also* 2 Walker, Patents, § 161 at 757.

We are persuaded that the proper standard is that of the "ordinary designer" in the field in question. Not only does this standard hew more closely to the statutory wording in § 103, but, as pointed out in *Fields v. Schuyler, supra* at 1306, it serves as a "more objective reference point" concerning obviousness than the "ordinary observer" standard.[9] If the latter standard were adopted, as again pointed out in *Fields*, commercial success of the design among the mass of "ordinary" consumers would be a "virtually conclusive determinant" of non-obviousness, rather than the secondary consideration it is supposed to be under the rule of *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545.[10]

In sum, we cannot agree with plaintiff Sidewinder that the proper standard is that of the ordinary intelligent man. We feel

---

**9.** We acknowledge the necessarily subjective element in any determination of the obviousness or non-obviousness of designs. *See In re Bartlett*, 300 F.2d 942, 944, 49 C.C.P.A. 969. Nevertheless, the skill and knowledge of the "ordinary designer" are capable of some proof in court (as by the testimony of three workers in the field in the instant case), whereas the viewpoint of the "ordinary observer" resolves itself into an "eyeball test" to be carried out by the trial judge or the jury, whichever decides the facts.

**10.** We feel that the plaintiff's reliance on *Smith v. Whitman Saddle Co.*, 148 U.S. 674, 680, 13 S.Ct. 768, 37 L.Ed. 606, and *Gorham Co. v. White*, 81 U.S. (14 Wall.) 511, 528, 20 L.Ed. 731 is misplaced. *Gorham Co. v. White* did apply the test of substantial similarity in the eye of an ordinary observer, but only in deciding the question of infringement of the patented design.

It is true that in *Smith v. Whitman Saddle Co.*, 148 U.S. 674, 679–80, 13 S.Ct. 768, 37 L.Ed. 606 (1893), in discussing patentability generally the Court referred to the test of identity of design as being that of sameness of appearance to the eye of an ordinary observer, citing *Gorham Manufacturing Co. v. White, inter alia*. However, we do not feel that this statement is controlling here since it was made long before the enactment of § 103 on obviousness with its standard of "a person having ordinary skill in the art . . ." and long before the clear reference in *Graham v. John Deere Co.* to "the level of ordinary skill in the pertinent art . . ." in applying the 1952 statute. 383 U.S. at 17, 86 S.Ct. at 694.

instead that the standard to apply is that of an ordinary designer in the sport and pleasure boat field.

## IV

*The trial court's findings on obviousness*

Although the ultimate test of patent validity is one of law, resolution of the obviousness issue necessarily entails several basic factual inquiries. *Sakraida v. Ag Pro, Inc.,* 425 U.S. 273, 280, 96 S.Ct. 1532, 47 L.Ed.2d 784. Those inquiries were outlined in *Graham v. John Deere Co., supra,* 383 U.S. at 17, 86 S.Ct. at 694, as follows:

> Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or non-obviousness of the subject matter is determined.

*See also Deere & Co. v. Hesston Corp.,* 593 F.2d 956 (10th Cir., 1979). Thus we are reviewing fact findings by the trial court which may not be set aside unless they are clearly erroneous. *See Rutter v. Williams,* 541 F.2d 878, 881 (10th Cir.); *CMI Corp. v. Metropolitan Enterprises, Inc.,* 534 F.2d 874, 880 (10th Cir.); *Halliburton Co. v. Dow Chemical Co.,* 514 F.2d 377, 379 (10th Cir.); *Moore v. Shultz,* 491 F.2d 294, 300 (10th Cir.).

Plaintiff Sidewinder makes several challenges to the trial court's findings as inadequate under the standard of *Graham v. John Deere Co.* Specifically, Sidewinder asserts that there was no determination of the scope and content of the prior art, or of the differences between that art and the design patent in question. (Appellant's Opening Brief, 24). It is also said that there was an insufficient factual basis for a determination as to the level of skill of the "ordinary designer" in the pertinent field. (*Id.* 26).

We do not feel that explicit findings in the exact terms of the *Graham* criteria are required, "[s]o long as it is clear

that the court has grappled with the problems presented," and its findings are "sufficient to provide [us] with a clear understanding of the . . . court's reasons so as to present an adequate review." *Price v. Lake Sales Supply R. M., Inc.,* 510 F.2d 388, 391 (10th Cir.). *See also Tanks, Inc. v. Reiter Industries, Inc.,* 545 F.2d 1276 (10th Cir.). We believe that the trial judge's findings in his opinion in this case do afford an adequate basis for us to see that the *Graham* inquiries were considered and substantially answered. *See* 418 F.Supp. at 229–31.

We feel that the record as a whole supports the trial court's findings on obviousness, applying the standards of an ordinary designer in the sport and pleasure boat field. It is true that the prior boat art cited by defendant and discussed by its president at trial [11] seems to argue obviousness of the Sidewinder patent by breaking down the design combination into its various known components, and that this is an impermissible basis for claiming obviousness. *See In re Jennings,* 182 F.2d 207, 208, 37 C.C.P.A. 1023. And as plaintiff points out and the trial court recognized, 418 F.Supp. at 225, the Super Sidewinder design did enjoy notable commercial success and favorable publicity, and was apparently widely copied.

Nevertheless, there are other factors which, with the entire record, persuade us that the findings on obviousness were not clearly erroneous. There is first the offsetting factor of contemporaneous independent development of designs similar to the Super Sidewinder design, *i. e.,* the Glastron boat (Defendant's Exhibit S) and the Avenger Too speed boat (Defendant's Exhibit N3, Appendix C). Moreover, in addition to the prior art in boat designs, which alone is not overly persuasive, there were automobile designs introduced by defendant at trial, and cited by the trial court's findings, 418 F.Supp. at 230–31, which sufficiently support the findings on obviousness. These include notably the DuPont amphibious car (Defendant's Exhibit I 3) and the

---

11. See II R. 41.

Cycolac Research Vehicle, (Defendant's Exhibit Q3).[12] Indeed the latter design is one with which a striking illustration was made at trial by defendant, by tracing the Cycolac design and superimposing it over the Super Sidewinder sideview. (*See* Figure 2 in Appendix A–1 and Appendix B–2 hereto). The Cycolac vehicle displays a windshield which is almost "continuously arcuate," and the car has an overall appearance of considerable similarity to the upper portion of the Super Sidewinder.[13]

We are satisfied that the trial court sufficiently considered the relevant factors in its detailed opinion and that the record amply supports the findings on obviousness. Accordingly the judgment is

AFFIRMED.

Appendices to follow.

---

12. The DuPont car suggests the lines of the Super Sidewinder design. To borrow from plaintiff's description of its patent, it can fairly be said that the car has a "slight rising forward 'deck' portion extending from the 'bow' past the windshield;" and a "low profile, swept back" windshield which curves to some degree (though not "continuously arcuate"), "extending rearward at each side of the [car] to merge smoothly with [a] 'raised coaming'" (inner quotes inserted).

The Cycolac demonstration vehicle bears considerable resemblance to plaintiff's design. It displays a windshield which appears almost "continuously arcuate" (Def.Ex. Q–3 at 14), thereby practically anticipating one of the most important aspects of the total Sidewinder design. This windshield merges smoothly into raised sides which are comparable to the gunwales of the Super Sidewinder. Though the car's hood is, not surprisingly, blunter than the bow of the speed boat, it "flows" back smoothly to the windshield, much as the forward deck in the patented design does.

13. The implications of the Cycolac design for the ordinary boat designer were described by James Starbuck, drawing on his experience with joining deck and hull sections in fiberglass boat-building (V R. 31–32):

[I]f you look at this car and the upper deck section that's the Figure 1 [in Def.Ex. Q–3], . . . you could see instantly that that is a nifty boat design that affords all the features that we've been talking about in these magazines. You just would have the higher windshield; you'd have the higher gunnels [sic] on the rear; you'd have the sleek styling; and you'd have basically everything you need to just take that top off that car and put it on a boat, and you would be able to fill all the things that everybody in these magazines . . . is trying to do in putting together each individual boat.

The illustration made by superimposing the Cycolac design over that of the Sidewinder might not be worth much alone, since it relies on an embossing of the Cycolac vehicle on the cover of a promotional brochure and does not otherwise reveal anything about the car. However, the full contents of the Cycolac exhibits furnish adequate proof of the prior existence of a vehicle with considerable similarity to the Sidewinder design.

APPENDIX A–1

# United States Patent Office

Des. 219,118
Patented Nov. 3, 1970

219,118

BOAT

Ken R. Baker, 661 Cascade Drive 94087, and Ronald Plecia, 16740 Ridgeview Ave. 95127, both of Santa Clara, Calif.

Filed Oct. 17, 1969, Ser. No. 19,596

Term of patent 14 years

Int. Cl. D12—06

U.S. Cl. D71—1

FIG.1

FIG.2

212

**Des. 219,118**

PAGE 2

FIG.3

FIG.4

FIG.5

FIG. 1 is a perspective view of the boat design of this invention;

FIG. 2 is a side elevational view thereof, the other side being substantially a mirror image thereof;

FIG. 3 is a front perspective view thereof;

FIG. 4 is a top view thereof; and

FIG. 5 is a back perspective view thereof.

We claim:

The ornamental design for a boat, as shown.

**References Cited**

UNITED STATES PATENTS

| | | | |
|---|---|---|---|
| D. 210,431 | 3/1968 | Raschke | D71—1 |
| D. 202,948 | 11/1965 | Koenig | D71—1 |
| D. 147,036 | 7/1947 | Dix | D71—1 |

OTHER REFERENCES

Roostertail Marine Brochure, rec'd Feb. 25, 1970, Sidewinder boat at top of page.

Rudder, September 1968, p. 17, Nova boat in three views on page.

Century 1967 catalog, rec'd Feb. 23, 1967, p. 1, Venturer 27 at upper right of page.

WALLACE R. BURKE, Primary Examiner

A. P. DOUGLAS, Assistant Examiner

APPENDIX B–1

## APPENDIX B–2

Case No. C-4864

SIDEWINDER MARINE, INC.
v. STARBUCK KUSTOM BOATS AND
PRODUCTS, INC.

Defendant's Exhibit S3

Date _____ No. _____ IDENTIFICATION

Date _____ No. _____ IN EVIDENCE

Clerk, U.S.District Court, District of Colorado

_____ Deputy Clerk

Tracing of Fig. 1
from Exhibit Q3

DEFENDANT'S
EXHIBIT
S3
C-4864

APPENDIX C

DEFENDANT'S EXHIBIT

N3

C-4864

PENGAD · Bayonne, N.J.

(above) Round Britain winner 'Avenger Too' with Timo Makinen
and Pascoe Watson lost an engine but finished 7th. Daily Express photo
(below) The scene on Souter's pontoon where scrutineering took place.